978 So.2d 977 (2007)
In the Matter of BELLE COMPANY, LLC. Type I and II Solid Waste Landfill, Proceedings Under the Louisiana Environmental Quality Act La. R.S. 30:2001 et seq.
Belle Company, L.L.C.
v.
Dr. Michael McDaniel, Secretary of the Louisiana Department of Environmental Quality; and Dr. Chuck Carr Brown, Assistant Secretary of the Louisiana Department of Environmental Quality.
Nos. 2006 CA 1077, 2006 CA 1078.
Court of Appeal of Louisiana, First Circuit.
December 28, 2007.
Writ Denied March 24, 2008.
*978 Edwin W. Fleshman, Taylor, Porter, Brooks, & Phillips, Baton Rouge, LA, for Appellant Belle Company, L.L.C.
Jackie M. Marve, Donald Trahan, Meredith H. Lieux, Roger K. Ward, Baton Rouge, LA, for Appellee Louisiana Department of Environmental Quality.
Adam Babich, Corrinne Van Dalen, New Orleans, LA, for Appellee Assumption Parish People's Environmental Action League.
James P. Dore, Alan J. Berteau, Kean, Miller, Hawthorne, D'Armond, McCowan & Jarman, LLP, Baton Rouge, LA, for Appellee Assumption Parish Police Jury.
Before PARRO, KUHN, GUIDRY, DOWNING, and HUGHES JJ.
PARRO, J.
An applicant for a solid waste disposal permit appeals from the portion of a district court judgment that denied its petition for a writ of mandamus. The applicant sought to have the Louisiana Department of Environmental Quality render a decision on its pending application. For the following reasons, that portion of the judgment is reversed, judgment is rendered in favor of the applicant, and this matter is remanded to the district court with instructions.

Factual Background and Procedural History
In 1994, Belle Company, L.L.C. (Belle) filed an application with the Louisiana Department of Environmental Quality (DEQ) *979 for a permit to construct and operate a non-hazardous solid waste disposal facility in Assumption Parish. On August 15, 1997, DEQ issued a permit to Belle for the construction and operation of a Type I and Type II non-hazardous solid waste landfill. On September 26, 1997, Assumption Parish People's Environmental Action League (APPEAL) filed a petition for review with the district court, naming DEQ as a defendant. In its petition, APPEAL raised nine assignments of error aimed primarily at the issue of whether DEQ had satisfied its duty as public trustee in issuing Belle's permit. Belle intervened in the district court proceeding. In response to allegations in APPEAL'S petition for review and a September 4, 1997 letter by G & E Engineering Environmental Consultants concerning Belle's preparations to meet the emergency response requirements of LSA-R.S. 30:2157, DEQ modified the permit on September 30, 1997, to include the following two additional conditions:
12A. Certifications required under LA R.S. 30:2157 from the local fire department, emergency medical services and hospital shall be obtained or the closest fire department, emergency medical service, and hospital that can provide the required services shall be identified prior to commencement of operation of the facility; or
B. To comply with Section 472 of the Life Safety Code of the NFPA (§ 2157[D]).
After considering the administrative record, briefs, and arguments, the district court concluded that DEQ had satisfied its duties as the public trustee in issuing Belle's permit; however, it determined that DEQ had erred in granting a permit to Belle without prior compliance with LSA-R.S. 30:2157. By judgment dated September 14, 1998, DEQ's decision to issue a permit was reversed by the district court, and the matter was remanded to DEQ for further proceedings on the issue of compliance with LSA-R.S. 30:2157.
APPEAL appealed to this court, contending that the district court had erred in rejecting its claim that (1) DEQ had violated its constitutional duty as protector of the environment, (2) DEQ had failed to make the capacity determination required by LSA-R.S. 30:2179 prior to the issuance of the permit, and (3) Belle's alternative site study was insufficient.[1] Belle filed an answer to the appeal, challenging the district court's finding that it had failed to comply with the requirements of LSA-R.S. 30:2157. In re Belle Co., L.L.C., 00-0504 (La.App. 1st Cir.6/27/01), 809 So.2d 225, 243.
This court concluded that DEQ's decision was supported by its factual findings and its articulation of a rational connection between the facts found and the permit issued. In this respect, DEQ was found to have performed its duty as protector of the environment, and APPEAL'S assignments of error were found to lack merit. In re Belle Co., L.L.C., 809 So.2d at 239 and 242.
In connection with Belle's answer, this court concluded that, in determining whether the permit should be issued, DEQ was required to decide whether the applicant for a permit for a solid waste disposal facility had satisfied the requirements of LSA-R.S. 30:2157(A), (B), and (C) or whether the applicant had shown that it had the ability, on its own, to meet the necessary response requirements. See LSA-R.S. 30:2157(D). Therefore, DEQ, in requiring as a condition of the permit that Belle merely comply with the requirements of Section 2157 before the landfill *980 became "operational," violated the provisions of this statute. Since the record revealed that these statutory requirements were not complied with prior to the issuance of the permit, we found no error in the district court's reversal of DEQ's decision to grant the permit prior to compliance with Section 2157. We further found no error in the district court's remand of this matter for further proceedings on the issue of compliance with the emergency response statute. In re Belle Co., L.L.C., 809 So.2d at 245.
Pursuant to our affirmance of the district court's judgment, Belle proceeded back before DEQ, presumably to show compliance with Section 2157. In December 2001, Belle submitted an update of its revised emergency response plan, a comprehensive contingency plan for hazardous materials emergencies that had been submitted to DEQ on March 2, 2000.[2] Public hearings were subsequently held on the revised contingency plan for hazardous materials emergencies. Meanwhile, DEQ requested that Belle update and supplement some of the data contained in its application that was unrelated to the emergency response issue. On June 29, 2005, a notice of deficiency was issued, which contained a request for Belle to provide, among other things, a wetlands determination pursuant to LAC 33:VII.521(A)(1)(e)(ii), a wetlands demonstration pursuant to LAC 33:VII.521(A)(1)(f), if applicable, and documentation that the proposed landfill did not violate existing land-use requirements pursuant to LAC 33:VII.519(N).
Upon inquiry from Belle, DEQ informed Belle by letter dated September 20, 2005, that the Water and Waste Permits Division had discontinued review of its permit application pending receipt by DEQ of the wetlands determination, the wetlands demonstration, if applicable, and proper documentation from the local governing body that the proposed use did not violate existing land-use requirements. With DEQ having formally refused to continue its review of Belle's permit application on the basis of incompleteness, Belle filed on September 22, 2005, a petition for a writ of mandamus.[3]
In its petition, Belle alleged the following. Upon its submission of the completed emergency response information required by LSA-R.S. 30:2157, DEQ should have granted it a permit as its permit application was deemed complete for purposes of the remand. In making additional requests not related to the emergency response issue, DEQ went beyond the scope of the remand and reopened the entire permit application for review. Belle urged that pursuant to the applicable version of LAC 33:I.1505(C),[4] the secretary of DEQ had a mandatory, non-discretionary duty to review and ultimately approve or disapprove a permit application within 410 days of its submittal. The deadline for a final decision may not be extended for more than 45 days, and then only in enumerated circumstances. Considering that more than 1,600 days had elapsed since Belle had fulfilled its emergency response requirements under LSA-R.S. 30:2157, Belle sought to have a writ of mandamus issued due to DEQ's failure to perform a ministerial *981 duty required by law. Specifically, Belle sought to have a writ of mandamus issued to DEQ's secretary and assistant secretary, directing them to immediately grant Belle's request for a solid waste disposal permit or to show cause to the contrary.
DEQ filed an exception raising the objections of lack of subject matter jurisdiction, no cause of action, nonjoinder of a party, and improper cumulation of actions.[5] In its exception, DEQ alleged that Belle's application had become stale and/or incomplete due to the passage of time and the resulting change of circumstances; therefore, it was necessary for the application to be reviewed anew, particularly because of the existing regulatory deficiencies in the Belle permit application. In its subsequently filed answer, DEQ urged that the matter before the court was inappropriate for a writ of mandamus due to the discretionary nature of its duty in connection with its decision on the issuance of a permit.
The Assumption Parish Police Jury filed a petition of intervention urging that DEQ should be permitted to complete its review and determination with regard to Belle's permit application. Therefore, it sought to have Belle's petition for a writ of mandamus dismissed.
In connection with the hearing on these matters, DEQ asserted that it had the discretion to determine when the statutory time periods under LSA-R.S. 30:2022(B) begin to run by deciding when an application was complete. Pursuant to the stipulation of all parties, the matter was tried by summary trial. See LSA-C.C.P. arts. 3781 and 3784. At the hearing, Belle urged that the permit application was complete in 1997 when it was granted. On review pursuant to APPEAL'S petition for review, the district court found one problem. Belle submitted that this problem was corrected by Belle by December 2001. In light of the district court's reversal of DEQ's issuance of the permit, DEQ urged that it was free to review Belle's entire application and make an independent determination.
At the conclusion of the hearing on Belle's petition for a writ of mandamus, the district court recognized the discretion afforded to DEQ in determining whether to issue a permit. In light of this discretion, the district court found that a writ of mandamus was inappropriate. Nonetheless, the district court recognized that Belle was entitled to have DEQ act on its permit in a timely manner once Belle complied with DEQ's request. Accordingly, on December 15, 2005, the district court denied Belle's petition for a writ of mandamus, and DEQ was ordered to issue a permit decision on Belle's solid waste permit application within five days of its receipt from Belle of a wetlands documentation, a wetlands demonstration, if applicable, and documentation that the proposed use did not violate existing land-use requirements.[6] In so holding, Belle maintained that the district court allowed DEQ to extend its review beyond the parameters authorized by the remand.
On December 28, 2005, Belle filed a motion for new trial on peremptory and discretionary grounds, seeking to offer evidence *982 to refute DEQ's position that Belle's application was not technically complete and urging that the district court had legally erred in its interpretation of LSA-R.S. 30:2022(B). In its motion, Belle urged that DEQ's regulations dictate that a permit application not be put out for public comment until it is technically complete. At the hearing on the motion for new trial, Belle conceded that DEQ has discretion in deciding whether a permit should be granted. However, Belle maintained that such discretion must be exercised within the time constraints imposed by LSA-R.S. 30:2022(B), that is, within 410 days from the time the application is submitted. Although the district court did not feel that it needed witness testimony as to the completeness of Belle's application, it allowed Belle the opportunity to proffer such evidence at the hearing on its motion for a new trial. Belle also supposedly introduced a copy of the emergency response plan that it had submitted to DEQ and the revised contingency plan for hazardous materials emergencies that was submitted to DEQ in December 2001.[7] After being taken under advisement, the motion was denied on the basis that no peremptory or discretionary grounds existed.
Subsequently, Belle filed a motion for appeal from the district court's judgments denying its petition for mandamus and denying its request for a new trial. On appeal, Belle urges that the district court erred in denying its petition for a writ of mandamus in the following respects:
1. by not ordering DEQ to make a decision on Belle's permit application,
2. by not allowing Belle to present evidence to show that DEQ had previously concluded that Belle's permit application was technically complete and that DEQ was satisfied with the revised emergency response plan, and
3. by not ordering DEQ to re-issue a permit to Belle since the remand of this case to that agency was limited to correction of a single deficiency, which was subsequently remedied to DEQ's satisfaction.

Mandamus
In general, LSA-C.C.P. art. 3863 provides, in pertinent part, that a writ of mandamus may be directed to a public officer to compel the performance of a ministerial duty required by law. However, as indicated in LSA-C.C.P. art. 3862, use of this extraordinary remedy is limited to situations where the law provides no relief by ordinary means or where the delay involved in obtaining ordinary relief may cause injustice. Mandamus will not lie in matters in which discretion and evaluation of evidence must be exercised. The remedy is not available to command the performance of an act that contains any element of discretion, however slight. Allen v. St. Tammany Parish Police Jury, 96-0938 (La.App. 1st Cir.2/14/97), 690 So.2d 150, 153, writ denied, 97-0599 (La.4/18/97), 692 So.2d 455. Further, mandamus is to be used only when there is a clear and specific legal right to be enforced or a duty that ought to be performed. It never issues in doubtful cases. Wiginton v. Tangipahoa Parish Council, 00-1319 (La.App. 1st Cir.6/29/01), 790 So.2d 160, 163, writ denied, 01-2541 (La.12/7/01), 803 So.2d 971.
Belle does not dispute that DEQ had discretion in determining whether a permit should be issued to it. Nonetheless, Belle contends that LSA-R.S. 30:2022(B) provides time delays during which DEQ must perform its duties. Belle urged that these time delays have expired in connection *983 with the remand to DEQ and that DEQ had no discretion concerning whether to make a decision, and thus the issuance of a writ of mandamus is appropriate. See LSA-R.S. 30:2050.29. In light of Belle's argument, we examine the applicable law to determine whether the district court's action was proper in denying Belle's petition for a writ of mandamus.

Time Limitations of LSA-R.S. 30:2022(B)
The time constraints for DEQ's administrative completeness review of a permit application are found in LSA-R.S. 30:2022(B), which at all pertinent times provided:[8]
No later than April 20, 1991, the secretary shall promulgate rules and regulations establishing procedures for the processing and review of permit applications for new facilities and applications for substantial permit modifications, including but not limited to administrative completeness reviews, checklists of required information, and maximum processing times, and which shall specify:
(1) Procedures for completeness review to determine whether an application contains the information required to substantively review the application. The completeness review procedure shall not extend beyond one hundred ten days from the date the application is submitted.
(2) The final decision shall not extend beyond four hundred ten days from the date the application is submitted, except where additional time is required for the applicant to revise or supplement technical deficiencies in the application, or for adjudicatory or judicial proceedings under R.S. 30:2024, or for consideration of comments received at a public hearing in the case of an extraordinary public response, however in no case shall the extension exceed forty-five days.
(3) Applications undergoing technical review shall not be subject to rule changes which occur during the technical review unless such changes are made in accordance with R.S. 49:953(B)(1) or are required by federal law or regulation to be incorporated prior to permit issuance. However, such a rule change made prior to the issuance of the permit may constitute grounds for a modification of the final permit.
(4) The deadlines established by this Section may be extended upon mutual agreement of the secretary and the applicant.
The applicable version of Subsection B was adopted by the legislature in 1990 by La. Acts, No. 686, § l.[9] Act 686 was expressly enacted to provide for deadlines in connection with DEQ's consideration of a permit application. The legislature chose to specifically set forth a time delay during which DEQ had to perform its administrative completeness review and to render its final decision rather than allowing such matters to be determined solely by regulatory guidelines.
Based on the language of Subsection B of the applicable version of Section 2022, Belle urged that DEQ had at most 110 days to decide whether its December 2001 submission of its revised application pursuant *984 to the remand was technically complete and had no more than a total of 410 days from the December 2001 submission date to grant or deny its pending permit application. According to Belle, the statute allowed for at most a 45-day extension. As of September 20, 2005, DEQ still had not made a decision in the remanded matter. Therefore, Belle urged that the district court erred in affording DEQ unlimited time to decide when a permit application is complete.
The time limitations imposed by LSA-R.S. 30:2022(B)(1) and (2) relate to the date the application was submitted. Clearly, from the date of submission after the remand, DEQ had 110 days to perform its completeness review[10] and 410 days to render a final decision. An extension of the 110-day period was not authorized by LSA-R.S. 30:2022(B)(1). This period could be extended only with the mutual consent of DEQ's secretary and Belle. See LSA-R.S. 30:2022(B)(4). Thus, absent mutual consent, DEQ was bound by law to make its administrative completeness review within 110 days of submission. Although DEQ had authority to extend the 410-day period for rendering a final decision, DEQ was only authorized to do so when additional time was required (1) for the applicant to revise or supplement technical deficiencies in the application, (2) for adjudicatory or judicial proceedings under LSA-R.S. 30:2024, or (3) for consideration of comments received at a public hearing in the case of an extraordinary public response. However, in no case was the extension of the 410-day period to exceed 45 days, unless otherwise consented to by DEQ's secretary and Belle. See LSA-R.S. 30:2022(B)(2) and (4). On appeal, DEQ argued that Belle acquiesced in the extension of these deadlines by its August 22 and 26, 2005 responses to the notice of deficiencies. Under the facts of this case, we do not find that Belle's actions constituted the consent necessary for a finding of mutual consent relative to the extension of these statutory guidelines.[11]
Clearly, this statute did not afford DEQ unlimited time during which to decide if a permit application is complete.[12] Furthermore, *985 the commencement of the running of the 410-day period was not contingent on a determination by DEQ that the application was technically complete as urged by DEQ. We agree with Belle that the deadline for making the ultimate permit decision, like the deadline for deciding administrative completeness, runs from the date of submission of the permit application. Obviously, the legislature enacted this statute to protect applicants from endless delays.
Accordingly, DEQ had at most 110 days to perform its administrative completeness review and 455 days to render a final decision relative to Belle's permit application. On remand to DEQ, Belle admittedly submitted revised data in December 2001 that was pertinent to the issue of its compliance with LSA-R.S. 30:2157. Belle's action in this regard was tantamount to a resubmission of its application for purposes of the remand. Afterwards, DEQ would have only had 110 days from the date in December 2001 on which the revised emergency response plan was presented to determine the completeness of the application and at most 455 days from that same date to render a final decision on its permit application.[13] We thus conclude that DEQ's deadline for rendering a final decision on remand would have long since passed by September 20, 2005, when DEQ notified Belle that it had discontinued review of the permit application.
Since DEQ's secretary failed to render a final decision within the deadline set forth in LSA-R.S. 30:2022(B), Belle acted properly in filing a petition for a writ of mandamus. See LSA-R.S. 30:2050.29. Furthermore, the district court erred in denying Belle's petition for a writ of mandamus. Under LSA-R.S. 30:2050.29, Belle was entitled to the issuance of a writ of mandamus from the Nineteenth Judicial District Court for the parish of East Baton Rouge, directing the secretary or authorized assistant secretary to act within a specified period of time.

Action by DEQ
Only one of APPEAL'S many oppositions to DEQ's issuance of Belle's permit were found by the district court in the petition for review to have merit, that is, the lack of prior compliance with LSA-R.S. 30:2157. In re Belle Co., L.L.C., 809 So.2d at 234. This deficiency alone was the basis for the district court's reversal of DEQ's decision to issue the permit and for this court's affirmance of the judgment of the district court. The district court has the authority to remand a case to DEQ for further proceedings. See LSA-R.S. 30:2050.21(F) and 49:964(G). The order of remand by the district court in this case directed that further proceedings be conducted on the issue of Belle's compliance with the emergency response statute. See In re Belle Co., L.L.C., 809 So.2d at 245. It did not authorize reconsideration of *986 Belle's entire permit application. Accordingly, on remand of this matter, DEQ did not have authority under the guise of its duty as the primary public trustee of the environment[14] to consider issues other than the one for which the case was remanded. See City of Shreveport v. Kansas City Southern Railway Co., 193 La. 277, 190 So. 404, 405 (1939), cert, denied, 308 U.S. 621, 60 S.Ct. 298, 84 L.Ed. 519 (1939); MTU of North America, Inc. v. Raven Marine, Inc., 499 So.2d 289, 291 (La.App. 1st Cir.1986), writs denied, 501 So.2d 773 and 776 (La.1987). The district court's judgment to the contrary is legally incorrect.

Decree
For the foregoing reasons, that portion of the judgment of the district court that denied Belle's petition for a writ of mandamus is reversed. We remand this matter to the district court and order the court to issue a writ of mandamus in favor of Belle, directing the secretary or authorized assistant secretary of the Louisiana Department of Environmental Quality to render a final decision consistent with this appeal on Belle's application within 30 days of the finality of this opinion. Costs of this appeal in the amount of $1,362.26 are assessed to the Louisiana Department of Environmental Quality.
REVERSED, RENDERED, AND REMANDED WITH INSTRUCTIONS.
GUIDRY, J., dissents and assigns reasons.
GUIDRY, J., dissenting.
I respectfully disagree with the majority's determination that DEQ failed to act on Belle's permit application within the time limits prescribed by La. R.S. 30:2022(B)(2), and that Belle is entitled to the issuance of a writ of mandamus ordering DEQ to render a final decision on Belle's permit application.
Louisiana Revised Statute 30:2022(B)(2) was amended by La. Acts 2006, No. 117 § 1. The provision, as amended, provides:
The final decision shall not extend beyond three hundred days from the date the application is submitted, except where additional time is required for the applicant to revise or supplement technical information or deficiencies in the application, or for adjudicatory or judicial proceedings under La. R.S. 30:2024, or for required review by the United States Environmental Protection Agency, or for consideration of comments received at a public hearing in the case of an extraordinary public response, however in no case shall the extension for consideration of comments exceed forty-five days.
According to La. R.S. 30:2022(B)(2), as amended, the time period within which DEQ has to issue a final decision on a permit application is shortened from 410 days to 300 days. Further, the amended provision permits an extension of this time period when the applicant is required to revise or supplement technical information or deficiencies in the application. Finally, the amended provision clarifies that an extension of the time period within which DEQ has to issue a final decision is limited to 45 days only when the consideration of comments from a public hearing is involved.
While this amendment occurred after Belle submitted its permit application in the instant case, DEQ asserts that the amendment to La. R.S. 30:2022(B)(2) represents a change in a procedural law, and therefore, applies retroactively to the instant *987 permit application. As such, DEQ asserts that because Belle failed to supplement its application with requested documentation regarding a wetlands determination and land use requirements, the time period under La. R.S. 30:2022(B)(2) has not expired, and accordingly, it is not required to issue a final decision until such time as Belle submits the requested documentation.
Louisiana Civil Code article 6 provides that "In the absence of contrary legislative expression, substantive laws apply prospectively only[; procedural and interpretative laws apply both prospectively and retroactively, unless there is a legislative expression to the contrary.[1]"
Article 6 requires a two-fold inquiry: (1) did the legislature express its intent regarding retrospective or prospective application, and (2) if not, is the law substantive, procedural, or interpretative. Cheron, 02-1049 at p. 11, 872 So.2d at 1101. In the instant case, the legislature did not make any clear expression regarding its intent concerning the retroactive application of Act 117. Therefore, in order to determine if Act 117 can be applied retroactively to the instant permit application, the law must be classified as substantive, procedural, or interpretative.
Substantive laws establish new rules, rights, and duties or change existing ones. Procedural laws prescribe a method (remedy) for enforcing a substantive right and relate to the form of the proceeding or the operation of the laws. Interpretative laws merely establish the meaning the interpreted law had from the time of its enactment. Wooley v. AmCare Health Plans of Louisiana, Inc., 05-2025, p. 7 (La.App. 1st Cir.10/25/06), 944 So.2d 668, 672-673.
In the instant case, Act 117 changed and clarified the time within which DEQ has to issue a final decision on a permit application, thereby delineating the method by which an applicant may enforce its substantive right. However, the substantive right of the applicant, Belle, to apply for a permit for a Type I and II solid waste disposal facility did not change. Accordingly, after reviewing the prior and amended statute, it is clear that the law is procedural in nature, and therefore, should apply retroactively to the instant permit application. See In Re: Belle Company, L.L.C. Type I and II Solid Waste Landfill Permit, 00-0504 (La.App. 1st Cir.6/27/01), 809 So.2d 225 (wherein this court determined with reference to the same permit application that La. R.S. 30:2157, which requires an applicant to obtain certification from local emergency response officials regarding their ability to meet emergency response requirements, was procedural and applied retroactively to Belle's permit application.)
Because an appellate court is bound to adjudge a case before it in accordance with the law existing at the time of its decision, and retroactive application of Act 117 is permissible as outlined above, La. R.S. 30:2022(B)(2), as amended, should be applied to the instant appeal. See Segura v. Frank, 93-1271, pp. 9-12 (La.1/14/94), 630 So.2d 714, 725.
Once La. R.S. 30:2022(B)(2), as amended, is applied to the instant appeal, it is clear that Belle is not entitled to the issuance of a mandamus. Because Belle failed to supplement its permit application with *988 the requested technical information regarding a wetlands determination and land use requirements, the time limit within which DEQ was required to issue a final permit decision was extended and remained pending until Belle submitted the requested information.[2]
Belle asserts that the additional information requested by DEQ was outside the scope of the remand from this court, which was presumably limited to consideration of emergency response requirements. However, this argument is misplaced. Despite our previous affirmance of the district court's decision to remand this matter to DEQ, the judiciary is prohibited under the doctrine of separation of powers from infringing upon the inherent powers of the executive branch. See Hoag v. State, 04-0857, p. 4 (La.12/1/04), 889 So.2d 1019, 1022. The decision to issue a permit for a type I and II solid waste disposal facility lies squarely within the province and discretion of DEQ, as mandated by the public trust doctrine in La. Const. Art. IX, § 1. See also Save Ourselves, Inc. v. Louisiana Environmental Control Commission, 452 So.2d 1152 (La.1984). Further, La. R.S. 30:2014 and 2018 reiterate that DEQ is the primary public trustee of the environment and shall consider and follow the intent and will of the Constitution of Louisiana and Louisiana statutory law in making any determination relative to the granting or denying of permits. Therefore, any attempt by the judiciary to limit the scope of DEQ's review of a permit application would impermissibly infringe on DEQ's constitutional mandate to act as public trustee in making any determination relative to the granting or denying of permits. As such, DEQ was constitutionally and statutorily permitted to review Belle's application in its entirety on remand and to require Belle to provide additional documentation.
Therefore, for the foregoing reasons, I respectfully dissent from the majority's decision, ordering the district court to issue a writ of mandamus in favor of Belle.
NOTES
[1] APPEAL also contended that the district court erred in allowing Belle to supplement the administrative record with DEQ's "Supplement To the Basis for Decision."
[2] This fact is conceded by DEQ in its answer to Belle's petition for a writ of mandamus.
[3] Belle also filed a separate lawsuit (Docket No. 536,648) in the event filing of a petition for mandamus in the existing lawsuit was not proper. These matters were consolidated.
[4] In July 2007, DEQ amended Title 33, Part I, Chapter 15 of the Louisiana Administrative Code. The 2007 amendments are inapplicable to Belle's permit application. See LAC 33:1.1501 (2007).
[5] In this pleading, DEQ conceded that in March 2000, Belle had submitted emergency response information pursuant to LSA-R.S. 30:2157 and in December 2001, Belle submitted an update of this information. According to DEQ, a public hearing was held on the emergency response information submitted by Belle in April 2002 and again in November 2004.
[6] On the same date, the court in a separate judgment granted Belle's motion to consolidate and denied the exceptions filed by DEQ.
[7] This evidence is not included in the appellate record.
[8] After the district court's hearing on Belle's petition for a writ of mandamus, LSA-R.S. 30:2022(B) was amended by 2006 La. Acts, No. 117, § 1, effective June 2, 2006. Unless otherwise stated, all references to this section will be to the version in effect when the application was filed by Belle and at the time of the hearing in this matter.
[9] Prior to that time, former LSA-R.S. 30:1070 governed the procedure pertaining to permit applications, variance requests, and notification.
[10] The purpose of this review is to determine if the application contains the information required to substantively review the application. LSA-R.S. 30:2022(B)(1).
[11] A request for an extension of deadlines relating to the completeness review, technical review, and final decision is governed by LAC 33:1.1505(E), which provides:

Any deadline established by this Section may be extended. A request for an extension of any deadline shall be submitted in writing by the permit applicant or by the secretary or his designee. The request shall specify the reasons and any special conditions that support a deadline extension. Written responses to all extension requests shall be submitted to the requestor within 10 days of receipt of the request.
The record is devoid of any such request by Belle or DEQ.
[12] DEQ's duty to perform an administrative review for completeness was further governed by LAC 33:1.1505(A), which, prior to the July 2007 amendments, provided:

Completeness Review
1. Within 60 days after submittal of a permit application for new facilities or an application for substantial permit modifications, the department shall perform a completeness review and submit written notification to the applicant that lists the application's specific deficiencies. Permit application forms and checklists of required information in the permit application review process shall be provided to the applicant upon request.
2. The applicant shall respond to the notice of deficiency within 30 days after receipt of the notice of deficiency. This response shall contain all of the information required by the department to proceed with processing the application, unless otherwise provided for under LAC 33:1.1505.E.
3. Within 110 days from the date a permit application is submitted, the department shall:
a. issue a letter of completeness; or
b. issue a notice of intent to deny the permit based on an incomplete application.
4. Within 30 days after receipt of a letter of completeness, the applicant shall publish a notice, provided by the department, of the completeness determination in a major local newspaper of general circulation and submit proof of publication to the Office of Environmental Services, Air Permits Division or Water and Waste Permits Division.
5. The requirement for publication of notice of completeness may be waived for applications for air quality permits for sources not defined as major in LAC 33:111.504, 509, or 5103.
6. The requirement for publication of notice of completeness may be waived for water quality permits for sources defined as minor by the administrative authority.
[13] In so stating, we render no opinion as to the applicability of the conditions for a 45-day extension under the facts of this case.
[14] See LSA-R.S. 30:2014(A)(4).
[1] Although La. R.S. 1:2 does not distinguish between substantive, procedural, and interpretative laws in its directive that no "section of the Revised Statutes is retroactive unless it is expressly so stated," this statute has been limited to apply only to substantive legislation. Cheron v. LCS Corrections Services, Inc., 02-1049, pp. 10-11 (La.App. 1st Cir.2/23/04), 872 So.2d 1094, 1101, aff'd 04-0703 (La. 1/19/05), 891 So.2d 1250.
[2] Alternatively, even if La. R.S. 30:2022(B)(2), as amended, did not apply to the instant permit application, Belle would still not be entitled to the issuance of a mandamus. Mandamus, as codified in La. C.C.P. art. 3862, is an extraordinary remedy, to be applied only where the action sought to be performed is purely ministerial in nature, leaving nothing to discretion. Hoag, 04-0857 at p. 6, 889 So.2d at 1023. The critical element necessary for the issuance of a mandamus is that the public official to whom the writ is directed may exercise no element of discretion when complying. DEQ is clearly afforded discretion in granting or denying a permit and in deciding if the application is complete or requires revision or supplementation. Accordingly, the issuance of a mandamus is inappropriate under the circumstances of this case.