THERIOT, J.
|sThe appellant, City of Baton Rouge Parish of East Baton Rouge, (“City Parish”), filed this appeal contesting the dismissal of their petition for judicial review, which challenged the decision of the Louisiana Department of Environmental Quality (“LDEQ”) to issue a Type I Solid Waste Disposal Permit to Louisiana Land Acquisitions (“LLA”). For the following reasons, we affirm.
FACTS AND PROCEDURAL HISTORY
In October 2006, LLA applied to LDEQ for a Type I Standard Solid Waste Disposal Permit (the “2006 Permit Application”) for the operation of an industrial waste landfill on 93 acres located at Brooklawn Drive, two miles west of Scenic Highway in Baton Rouge, East Baton Rouge Parish, Louisiana, in or near the Alsen/St. Irma Lee Community (the “Landfill”). On April 13, 2009, after determining that “there [was] sufficient capacity at existing permitted landfills to serve the area proposed in the application,” LDEQ denied the 2006 Permit Application. Pertinent to some of the City Parish’s arguments in this appeal, LLA repeatedly sought to have the denial reversed and the 2006 Permit Application granted, and LLA’s appeal of LDEQ’s denial of the 2006 Permit Application remains pending in the 19th Judicial District Court, Docket No. 579,336 (the “Pending 2006 Appeal”). On April 12, 2013, LLA filed an “Unopposed Motion and Order to Continue Scheduling Conference” in the Pending 2006 Appeal. The trial court signed the order continuing the proceeding without date. No further steps have been taken in the Pending 2006 Appeal.[1]
*16 |4On March 14, 2014, LLA again applied to LDEQ for a Type I Solid Waste Disposal Permit (the “2013 Permit Application”) for the operation of an industrial waste landfill on the same property that was the subject of the 2006 Permit Application. LDEQ issued the Permit to LLA on April 4, 2014 (the “Permit” or the “2014 Permit Decision”).[2]
On May 16, 2014, City Parish filed a petition seeking judicial review of LDEQ’s issuance of the Permit[3] (“City Parish v. LDEQ”). On May 21, 2014, Louisiana Environmental Action Network (“LEAN”)[4] and Ms. Bertha L. Myles (“Myles”), a resident of a community neighboring the Landfill, also filed a petition for judicial review of LDEQ’s decision to grant the Permit[5] (“LEAN v. LDEQ ”). Both petitions for judicial review argued that LDEQ lacked authority to grant the Permit, because the trial court functions |sas an appellate court when reviewing an LDEQ final decision, and thus, LLA’s Pending 2006 Appeal divested LDEQ of jurisdiction and authority to consider and render a decision on the 2013 Permit Application, which had been filed by the same applicant for the same industrial solid waste disposal facility. City Parish also argued that LDEQ had failed to properly consider permitted solid waste capacity; that LDEQ’s record lacked adequate proof *17 of zoning from City Parish; and that the permit contained technical defects. City Parish sought a stay of the permit decision pursuant to La. R.S. 30:2050.22 during the pendency of the appeal.
LLA intervened in the proceedings for judicial review, and City Parish v. LDEQ, and LEAN v. LDEQ were consolidated pursuant to unopposed motions for transfer and consolidation.
LDEQ and LLA excepted to the petitions for judicial review on the basis of no right of action and lack of subject matter jurisdiction; and alternatively moved to dismiss the petitions. LDEQ and LLA argued that City Parish had no right of action to bring the petition for judicial review because City Parish failed to raise the issues complained of prior to the issuance of the final permit decision by LDEQ as required by La. R.S. 30:2014.3 and that the trial court lacked subject matter jurisdiction over the petition for the same reason.
At a July 21, 2014 hearing, the trial court sustained the exceptions raising the objection of no right of action and dismissed the petition for judicial review with prejudice, assessing costs to the City Parish. A judgment evidencing the ruling was signed on August 7, 2014. City Parish timely appealed the judgment of the trial court.
1 (ASSIGNMENTS OF ERROR
City Parish alleges five assignments of error:
A.The district court erred by ruling that LDEQ had subject matter jurisdiction to review the same subject matter and decide the same issues before the district court in connection with LLA’s pending de novo review of LDEQ’s 2009 Permit Denial.
B. The district court erred in finding that La. R.S. 30:2014.3 entitled “Review of secretary’s public trustee issues, “applies to all issues arising in LDEQ permit proceedings, including the independent statutory mandate that “[pjermitted capacity shall be considered along with other relevant factors in the permitting of solid waste.” La. R.S. 30:2162(B)(2).
C. The district court erred in concluding that all issues arising in the context of LDEQ permit applications are public trustee issues as defined by the Louisiana Constitution and Save Ourselves v. La. Envt’l Control Comm’n, 452 So.2d 1152 (La.1984).
D. The district court erred in holding that La. R.S. 30:2014.3 requires each person seeking judicial review of an LDEQ permit decision to independently raise during the administrative proceeding each and every issue raised in its Petition for Judicial Review when those issues indisputably are part of the administrative record before LDEQ and indisputably were considered by LDEQ in its Reasons for Decision.
E. The district court erred in finding that the issues raised by a Metro Council member appearing at a public hearing in his official representative capacity cannot later be raised by the City Parish in its appeal.
DISCUSSION
Article 9, § 1 of the Louisiana Constitution sets forth the public policy of protecting our natural resources and environment:
The natural resources of the state, including air and water, and the healthful, scenic, historic, and esthetic quality of *18 the environment shall be protected, conserved, and replenished insofar, as possible and consistent with the health, safety, and welfare of the people. The legislature shall enact laws to implement this policy.
The LDEQ is the primary agency in the state concerned with environmental protection and regulation and has been explicitly granted jurisdiction over matters affecting the regulation of solid waste disposal. La. _[jR.S. 30:2011(A)(1). The LDEQ Secretary has authority to grant or deny permits. La. R.S. 30:2011(D)(2); Harrelson Materials Mgmt., Inc. v. Louisiana Dep’t of Envtl. Quality, 2006-1822 (La.App. 1st Cir.6/20/07) (unpublished opinion). Under La. R.S. 30:2014(A)(4), the LDEQ Secretary is mandated to act as the primary public trustee of the environment and to consider and follow the will and intent of the Constitution of Louisiana and Louisiana statutory law in making any determination relative to the granting or denying of permits.
Louisiana • Revised Statutes 30:2022(A)(1) provides that any person seeking a permit shall file a written application for such with the Secretary, and La. R.S. 30:2022(A)(2) provides that the Secretary “shall promptly consider such application and take such action thereon as he deems appropriate in accordance with law.” Under La. R.S. 30:2022(B)(2), the “final decision shall not extend beyond three hundred days from the date the application is submitted.”
LDEQ’s authority to consider the 2013 Permit Application
City Parish’s first assignment of error maintains that LDEQ lacked subject matter jurisdiction to issue a decision on the 2013 Permit Application while a de novo review of the 2006 Permit Application remained pending before the trial court.[6]
Jurisdiction over the subject matter is the legal power and authority of a court to hear and determine a particular class of actions or proceedings, based upon the object of the demand, the amount in dispute, or the value of the right asserted. La. C.C.P. art. 2. The trial court is divested of jurisdiction |Ras to the parties and issues which are the subject of the judgment which has been appealed. La. C.C.P. art.2088; Denton v. State Farm Mut. Auto. Ins. Co., 2008-0483 (La.12/12/08), 998 So.2d 48, 55. Once a timely appeal is filed, the trial court retains jurisdiction over a judgment on appeal only over matters not reviewable under the appeal. Louisiana Casino Cruises, Inc. v. Capitol Lake Properties, Inc., 2004-0882 (La.App. 1st Cir.3/24/05), 915 So.2d 784, 785. The Louisiana Legislature granted the Nineteenth Judicial District Court jurisdiction to review final permit actions, final enforcement actions and declaratory actions of LDEQ. La-R.S. 30:2050.21; Matter of Angus Chemical Co., 1994-1148 (La.App. 1st Cir.6/26/96), 679 So.2d 454, 456; In re Westlake Petrochemicals Corp. Ethylene Plant Part 70, 1999-1726 (La.App. 1st Cir.11/3/00), 769 So.2d 1278, 1280. The district court functions in its capacity as an appellate court and should not reverse a substantive decision of LDEQ unless it can be shown that the actual balance of costs and benefits that was struck was arbitrary or clearly gave *19 insufficient weight to environmental protection. Dow Chemical Co. Louisiana Operations Complex Cellulose and Light Hydrocarbons Plants, Part 70 Air Permit Major. Modifications and Emission v. Reduction Credits, 2003-2278 (La.App. 1st Cir.9/17/04), 885 So.2d 5, 10, writ denied, 2004-3005 (La.2/18/05), 896 So.2d 34; Louisiana Land Acquisition, LLC v. Louisiana Dep’t of Envtl. Quality, 2011-2037 (La.App. 1st Cir.7/18/12), 97 So.3d 1144, 1146 (La.App. 1st Cir.) writ granted in part, 2012-1872 (La.11/16/12), 103 So.3d 358.
City Parish maintains that pursuant to La. R.S. 30:2024 and La. R.S. 30:2050.21, LLA has invoked the jurisdiction of the trial court for de novo review of the issues raised in the 2006 Permit Application; thus, City Parish asserts that, because' the “object of the demand” of the 2006 Permit | ^Application is a Type I Solid Waste Disposal Permit from LDEQ allowing LLA to operate the industrial solid waste Landfill at the Brooklawn Drive location, and the 2013 Permit Application pursued the same object, LDEQ was divested of subject matter jurisdiction to consider the 2013 Permit Application by the pendency of the de novo review of the 2006 Permit Application before the trial court. City Parish argues that LDEQ’s review “of the same issues pending before it on LLA’s de novo review” could not possibly be “in accordance with law” pursuant to La. R.S. 30:2022(A)(2). City Parish contends that after its receipt and initial consideration of the 2013 Permit Application, LDEQ was obligated to refuse to intrude upon the subject matter of the courts by reviewing the same issues pending in the de novo review of the 2006 Permit Application.
LDEQ argues that not only did it have authority to consider the 2013 Permit Application, but that it was statutorily mandated to both consider and issue a decision on the 2013 Permit Application. LDEQ concedes that many similarities exist and should be expected, considering that the applicant, the location of the facility, and the primary nature of the proposed operations have remained unchanged; however, LDEQ argues that there are many substantive differences between the two applications.
This Court’s review of the record indicates that the 2006 Permit Application and the 2013 Permit Application differ both in substantive content and in legal context. The 2006 Permit Application was denied because LDEQ found there was sufficient permitted solid waste capacity to serve the proposed service area; in contrast, the 2013 Permit Application proposed a different service area, and demonstrated that three of the six facilities previously identified as permitted to accept industrial solid waste in the proposed service area should not be considered in the context of the Indecision to issue a Type I Solid Waste Disposal Permit to LLA.[7] Thus, LDEQ concluded that the capacity represented by existent landfill facilities did not preclude *20 issuance of the LLA permit, and the benefits of the LLA facility outweighed any increase in risk that the facility may pose. Significantly, the permitted solid waste capacity analysis in the 2013 Permit Application differed from the capacity analysis in the 2006 Permit Application at least in part due to 2011 amendments to the governing statutes and regulations.
Following the 2011 amendments, LAC 33:VII.513.B.l now mandates that a permit applicant submit a Capacity Evaluation for its proposed service area showing the need for the proposed landfill; similarly, LAC 33:VII.513.B.3 now requires that a permit application include an Emergency Response Plan that has been submitted to the State Fire Marshal for ¿pproval. Thus, LLA’s 2013 Permit Application contained both a Capacity Evaluation and an Emergency Response Plan, which were not part of the 2006 Permit Application. These amendments, in turn, affected the content of the Environmental Assessment Statement required by La. R.S. 30:2018, which was submitted in the 2013 Permit Application, resulting in significant and substantive differences between the contents of the two applications.[8] In |nshort, it is not only obvious that the content of the applications is substantively different, but some of these differences were mandated by law. Thus, we conclude that the object of the demand in the applications is not the same, and therefore, the Pending 2006 Appeal did not divest LDEQ of its statutory authority to consider the 2013 Permit Application.
Further, we find City Parish’s argument that LDEQ is divested of authority to consider a permit application by the pendency of an appeal on a permit application' filed by the same applicant for the same location and same type of permit to be without merit. LDEQ is required by law both to consider a permit application and to do so timely. See La. R.S. 30:2011, et seq. In particular, La. R.S. 30:2022(A)(2) states that the LDEQ Secretary will promptly consider permit applications, and La. R.S. 30:2022(B)(2) provides deadlines for LDEQ to take action on permit applications; if the LDEQ Secretary fails to render a final decision within these deadlines, the applicant is entitled to the issuance of a writ of mandamus from the Nineteenth Judicial District Court. See La. R.S. 30:2050.29; In re Belle Co., L.L.C., 2006-1077 (La.App. 1st Cir.12/28/07), 978 So.2d 977, 985, writs denied, 2008-0220, 2008-0229 (La.3/24/08), 977 So.2d 957, 958. In addition, LDEQ is mandated to consider “economic, social and other factors” pursuant to Save Ourselves, Inc. v. Louisiana Envtl. Control Comm’n, 452 So.2d 1152, 1157 (La.1984); thus, even if the applications were identical, LDEQ would not be precluded by law from issuing a decision on the 2013 Permit Application simply because a de novo review of [12the 2006 Permit Application was pending before a trial -court, as LDEQ’s consideration of separately filed and re *21 ceived applications would not occur in a vacuum but would also factor in the conditions that exist at the time the application is being considered. Finally, as argued by LLA, if this Court accepts City Parish’s arguments, it would negate the authority of LDEQ to amend its permit application regulations, as it did in November 2011, and to receive and process new applications under its amended regulations.
City Parish’s entire argument presupposes and requires that this Court find that the 2006 Permit Application arid the 2013 Permit Application are, in fact, virtually indistinguishable, such that there is no possibility that a substantive review of the two applications could result in a different outcome. Further, in order for City Parish’s argument to succeed, it would mandate a ruling from this Court that once a permit application is denied, a permit applicant that petitions for de novo review before the trial court is then precluded from re-applying for a permit for the duration of the time its appeal is pending. This Court’s review of the record, which contains the history of the 2006 Permit Application and the 2013 Permit Application in their entireties, does not support a finding that the two applications are indistinguishable. To the contrary, the record clearly demonstrates that the applications differ both in their content and in the legal and circumstantial context within which they were considered by LDEQ. Similarly, this Court’s review of the law does not support a finding that the pendency of an applicant’s petition for judicial review of one permit application precludes that applicant from applying for a separate and distinguishable permit application. Thus, with respect to this assignment of error, City Parish’s argument is denied.
|1sNo Right of Action under La. R.S. 30:2014.3
In the four remaining assignments of error addressing the interpretation and application of La. R.S. 30:2014.3 to issues raised in City Parish’s petition for judicial review, City Parish argues that the trial court erred in finding that it had no right of action. Louisiana Revised Statutes 30:2014.3, entitled “Review of secretary’s public trustee issues,” provides in full:
A. This Section shall apply to the department and all permit applicants and shall apply only with respect to the public trustee issues, as provided in Article IX, Section 1 of the Constitution of Louisiana and by the Supreme Court of Louisiana in the case of Save Ourselves, Inc. v. Louisiana Environmental Control Commission, 452 So.2d 1152 (La.1984). Subsequent case law and laws interpreting said decisions and the rules and regulations adopted by the department in accordance with those decisions may be used to implement the public trustee issues, to be addressed by the secretary when making decisions with respect to permits, licenses, registrations, variances, or compliance schedules authorized by this Subtitle.
B. The applicant and any person who may become a party to an administrative or judicial proceeding to review the secretary’s decision on an application must raise all reasonably ascertainable issues and submit all reasonably available evidence supporting his position on the permit application prior to the issuance of the final decision by the department so that the evidence may be made a part of the administrative record for the application.
C. No evidence shall be admissible by any party to an administrative or judicial proceeding to review the secretary’s decision on the application that was not submitted to the department prior to issuance of a final decision or made a *22 part of the administrative record for the application, unless good cause' is shown for the failure to submit it. No issues shall be raised by any party that were not submitted to the department prior to issuance of a final decision or made a part of the administrative record for the application unless good cause is shown for the failure to submit them. Good cause includes the case where the party seeking to raise new issues or introduce new evidence shows that it could not reasonably have ascertained the issues or made the evidence available within the time established for public comment by the department, or that it could not have reasonably anticipated the relevance or materiality of the evidence or issues sought to be introduced.
114The peremptory exception pleading the objection of no right of action tests whether the plaintiff has any interest in judicially enforcing the right asserted. Torbert Land Co., LLC v. Montgomery, 2009-1955 (La.App. 1st Cir.7/9/10), 42 So.3d 1132, 1135, writ denied, 2010-2009 (La.12/17/10), 51 So.3d 16; see La. C.C.P. arts. 681 and 927(A)(6). Simply stated, the objection of no right of action tests whether this particular plaintiff, as a matter of law, has an interest in the claim sued on. Torbert, 42 So.3d at 1135. Evidence supporting or controverting an objection of no' right of action is admissible. Id. The party raising a peremptory exception bears the burden of proof. Id. To prevail on a peremptory exception pleading the objection of no right of action, the defendant must show that the plaintiff does not have an interest in the subject matter of the suit or legal capacity to proceed with the suit. Id. Whether a plaintiff has a right of action is ultimately a question of law; therefore, it is reviewed de novo on appeal. Id. Thus, the issue before us is whether La. R.S. 30:2014.3 precludes City Parish from seeking judicial review of LDEQ’s issuance of the Permit.
Louisiana Revised Statutes 30:2014.3(A) explicitly states that the statute applies “only with respect to the public trustee issues.” In its second and third assignments of error, City Parish contends that LDEQ was not acting in its role as a public trustee when determining whether to issue the 2013 Permit Application, and thus, La. R.S. 30:2014.3 does not apply. Specifically, in its third assignment of error, City Parish maintains that the district court erred in concluding that all issues arising in the context of LDEQ permit applications are public trustee issues as defined by the Louisiana Constitution and Save Ourselves, 452 So.2d 1152; similarly, in its second assignment of error, City Parish maintains that the trial court erred in finding that La. R.S. 30:2014.3 applies to all issues arising in LDEQ permit | ^proceedings, including the independent statutory mandate regarding solid waste capacity that “[permitted capacity shall be considered along with other relevant factors in the permitting of solid waste.” La. R.S. 30:2162(B)(2). As both assignments of error relate to the application of La. R.S. 30:2014.3(A), we consider these two issues together.
Louisiana Revised Statutes 30:2014.3(A) applies only with respect to the public trustee issues, as provided in Article IX, Section 1 of the Constitution of Louisiana and by the Supreme Court of Louisiana in the case of Save Ourselves. City Parish maintains that while LDEQ acts as public trustee of the environment when issuing permit decisions, not all of the issues LDEQ decides in a permit proceeding are public trustee issues as defined by the Louisiana Constitution and Save Ourselves. City Parish contends that this position is supported by the 2014 Permit Decision, which includes a section of the *23 Basis for Decision entitled “Consideration of Permitted Capacity” and states, “Louisiana Revised Statutes 30:2162(B)(2) directs the Secretary to consider ‘permitted capacity ... along with other relevant factors in the permitting of solid waste.’ This issue was central to the denial of the previous solid waste permit applications for the Brooklawn Disposal Facility.”
In all cases of statutory interpretation, legislative intent is the fundamental question, and the well-established rules of statutory construction are designed to ascertain and enforce the intent of the statute. Boudreaux v. Louisiana Dept, of Public Safety and Corrections, 2012-2039 (La.10/16/12), 101 So.3d 22, 26. Legislation is the solemn expression of the legislative will and, therefore, the interpretation
of a law primarily involves the search for the legislature’s intent. Red Stick Studio Dev., L.L.C. v. State ex rel. Dep’t of Econ. Dev., 2010-0193 (La.1/19/11), 56 So.3d 181, 197. | ifiThe starting point in ascertaining that legislative intent is the language of the statute itself. Livingston Parish Council On Aging v. Graves, 2012-0232 (La.12/4/12), 105 So.3d 683, 685. In examining that language, words and phrases are to be read in their context and to be accorded their generally prevailing meaning. La. C.C. art. 11; La. R.S. 1:3. When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written, and no further interpretation may be made in search of the intent of the legislature. See La. C.C. art. 9; see also Ciliber-ti v. Mistretta, 2003-1559 (La.App. 1st Cir.5/14/04), 879 So.2d 789, 795. In making a determination relative to the granting or denying of permits, the LDEQ Secretary “shall act as the primary public trustee of the environment, and shall consider and follow the will and intent of the Constitution of Louisiana and Louisiana statutory law.” La. R.S. 30:2014(A)(1) and (4); Matter of Am. Waste & Pollution Control Co., 1993-3163 (La.9/15/94), 642 So.2d 1258, 1262; Wilson v. Davis, 2007-1929 (La.App. 1st Cir.5/28/08), 991 So.2d 1052, 1058, writs denied, 2008-2011, 2008-2020 (La.11/10/08), 996 So.2d 1070, 1071; Matter of Browning-Ferris Indus. Petit Bois Landfill, 1993-2050 (La.App. 1st Cir.6/23/95), 657 So.2d 633, 636, writs denied, 1995-2127, 1995-2155 (La.11/27/95), 663 So.2d 742. It clearly follows that all issues arising in the context of LDEQ permit applications are public trustee issues; to find that LDEQ acts as a public trustee only with respect to certain portions of its determinations regarding granting or denying permits would be absurd. Thus, City Parish’s third assignment of error fails.
Further, La. R.S. 30:2014.3(A) provides in part, “[sjubsequent case law and laws interpreting said decisions and the rules and regulations adopted by the department in accordance with those decisions may be used to implement the public trustee issues, to be addressed by the secretary when 117making decisions with respect to permits, licenses, registrations, variances, or compliance schedules authorized by this Subtitle.” Thus, the statute indicates that the scope of LDEQ’s public trustee issues may be expanded by subsequent jurisprudence, changes in the laws, or changes in LDEQ regulations. Pursuant to the Louisiana Solid Waste Management and Resource Recovery Law, La. R.S. 30:2151 et seq., the legislature has recognized that “the disposal and utilization of solid waste is a matter of vital concern to all citizens of this state, and' that the safety and welfare of the people of Louisiana require efficient and reasonable regulation of solid waste disposal practices. ...” La. R.S. 30:2152. Thus, LDEQ has the authority to issue permits for solid waste disposal facilities. La. R.S. 30:2011 *24 A; Louisiana Envtl. Action Network v. Louisiana Dep’t of Envtl. Quality, 2011-1935 (La.App. 1st Cir.7/25/12), 97 So.3d 1148, 1151 writ denied, 2012-1926 (La.11/9/12), 100 So.3d 842. In addition, La. R.S. 30:2162(B)(2), mandates that LDEQ consider permitted capacity evaluations when considering such permits.
The meaning and intent of a law is determined by considering the law in its entirety and all other laws on the same subject matter and by placing a construction on the law that is consistent with the express terms of the law and with the obvious intent of the legislature in enacting the law. SWAT 24 Shreveport Bossier, Inc. v. Bond, 2000-1695 (La.6/29/01), 808 So.2d 294, 302; Succession of Boyter, 1999-0761 (La.1/7/00), 756 So.2d 1122, 1129. When the LDEQ Secretary considers available permitted landfill capacity along with other considerations when deciding whether a new landfill permit should be issued, LDEQ is making a determination relative to the granting or denying of permits, within the meaning of La. R.S. 30:2014.3(A), and is therefore performing duties as public trustee of the environment. Therefore, 118La. R.S. 30:2014.3(A) applies to all issues arising in LDEQ permit proceedings, including the statutory mandate that “[p]ermitted capacity shall be considered along with other relevant factors in the permitting of solid waste.” La. R.S. 30:2162. Thus, the City Parish’s second assignment of error fails.
In its fourth assignment of error, City Parish contends that the trial court erred in holding that La. R.S. 30:2014.3 requires each person seeking judicial review of an LDEQ permit decision to independently raise during the administrative hearing each issue raised in its Petition for Judicial Review when those issues are part of the administrative record before LDEQ and were considered by LDEQ in its Reasons for Decision. In its fifth assignment of error, City Parish contends that the trial court erred in finding that the issues raised by a Metro Council member appearing at a public hearing in his official representative capacity cannot later be raised by the City Parish in its appeal. As both assignments of error relate to the application of La. R.S. 30:2014.3(B) and (C), we consider these two issues together.
In accordance with LAC 33:VII.513.B.7, LLA published a notice of its intent to submit an “application for a permit to operate a Type I Industrial Landfill in East Baton Rouge Parish” in The Advocate on March 8, 2013. R. 72. At the request of LLA, LDEQ scheduled a public hearing on the 2013 Permit Application for July 2, 2013. The hearing was postponed twice at the public’s request. The public comment period was also extended twice to provide additional opportunities for public participation. During the public comment period, the East Baton Rouge Metropolitan Council submitted a resolution expressing the Council’s opposition to the LLA permit application.
11sThe public hearing was ultimately held on August 27, 2013. Councilmembers Chauna Banks-Daniel, Trae Welch, Ronnie Edwards, and Mayor-President Melvin “Kip” Holden presented oral comments at the public hearing. Metro Councilman Welch stated at the public hearing:
This [LLA Permit] has already been done several times. The problem that I see again is that there’s really no change. The last time it came up, it was a difference of capacity. We in East Baton Rouge Parish, we have a permitted landfill that could accept industrial waste, if necessary. But we don’t measure the capacity in this region in days or months or years. We measure the capacity in this region that they [LLA] *25 want to serve in decades. It’s not necessary right now.
Metro Councilman Welch also offered the resolution of the Metropolitan Council opposing the Landfill, which stated that the Metropolitan Council opposed the Permit “due to its proximity to populated areas, the short time period given for the evaluation of the issues prior to the public hearing, the types of waste proposed to be disposed of at the site, and the traffic of trucks delivering industrial waste on a main thoroughfare in populated areas.”
In its fifth assignment of error, City Parish argues that Metro Councilman Welch attended the public hearing in connection with the 2018 Permit Application in furtherance of City Parish business, in support of the City Parish Resolution denouncing the Landfill, and to make further arguments against the Landfill in support of his constituents. Thus, City Parish argues that the trial court erred in finding that Metro Councilman Welch had not appeared in his official capacity and his remarks were not sufficient to preserve the appellate rights of City Parish.
LDEQ argues that the Metropolitan Council had not authorized Metro Councilman Welch to speak or act on its behalf at the public hearing, and therefore, Metro Councilman Welch did not have the authority to raise the 12nSolid waste capacity issue on behalf of the Metropolitan Council. LDEQ further asserts that even if Councilman Welch had authority to speak and act on behalf of the Metropolitan Council, the Council resolution opposing the Permit he read — which did not indicate that the Council had granted him authority to act o,n its behalf — contained no reference to the issues brought by City Parish in the petition for judicial review. Rather, the resolution stated that the Council opposed the Permit “due to its proximity to populated areas, the short time period given for the evaluation of the issues prior to the public hearing, the types of waste proposed to be disposed of at the site, and the traffic of trucks delivering industrial waste on a main thoroughfare in populated areas.” Specifically, the term “capacity” is not present in the resolution; thus, LDEQ argues that City Parish cannot rely on it to preserve the issue of capacity.
Pursuant to La. R.S. 33:1286, entitled “Powers of parish governing authorities,” and the jurisprudence interpreting it, an individual member of a governing authority does not have the authority to speak or act on behalf of, or otherwise bind the entire governing authority. See Drachenberg v. Parish of Jefferson, 563 So.2d 523, 526 (La.App. 5th Cir.1990); Guillory v. Calcasieu Parish Police Jury, 410 So.2d 1213, 1217 (La.App. 3rd Cir.1982). Starnes v. Police Jury of Rapides Parish, 27 So.2d 134, 136 (La.App. 2d Cir.1946); Int’l Harvester Co. of Am. v. Police Jury of Red River Parish, 177 So. 70, 71 (La.App. 2d Cir.1937) (“A police jury is a political corporation, and it cannot be bound or legally represented in any contract or judicial proceeding without its special authority”). LDEQ has established a lack of evidence indicating that Metro Councilman Welch had been granted such authority when he spoke at the public hearing regarding the 2013 Permit Application. Therefore, we find that Metro Councilman Welch did |21not appear in his official capacity, and his remarks were not sufficient to preserve the appellate rights of City Parish. City Parish’s fifth assignment of error lacks merit.
In its fourth assignment of error, City Parish argues that the solid waste capacity issue was raised during the administrative proceeding in connection with the 2013 Permit Application, and was reviewed by LDEQ; therefore, City Parish maintains that pursuant to La. R.S. *26 30:2014.3(B) and (C), the permitted solid waste capacity issue was properly raised in its petition for judicial review, even though City Parish did not expressly raise the issue itself. City Parish asserts that any other interpretation of the statute renders subpart C meaningless.
LDEQ acknowledges that the administrative record reflects that the issue of capacity was raised during the public comment period and that it conducted an extensive capacity analysis, but maintains that specific concerns regarding capacity were not raised by City Parish prior to the issuance of the Permit as required by La. R.S. 30:2014.3(B). LDEQ asserts that City Parish’s argument that “issues can be raised on appeal even if the person appealing did not expressly raise the issue themselves,” amounting to after-the-fact bootstrapping onto issues raised by others, is not consistent with the plain language of La. R.S. 30:2014.3(B), which requires any “person who may become a party” to bring its issues to LDEQ. LDEQ argues that it is not sufficient for a party to eschew participation in the application review process and then bring its issues to the courts based on concerns brought by others who actively participated. Further, LDEQ maintains that City Parish’s interpretation of the statute is inconsistent with the purpose of the law, because if a single comment on any issue is deemed sufficient to raise the issue on behalf of all sharing similar concerns, LDEQ |22has no way to gauge the scope of actual concern over the issue. LLA argues that even if Metro Councilman Welch’s comments related to the issues City Parish raised on appeal, the trial court properly dismissed the appeal because City Parish failed to submit any supporting evidence to LDEQ before it made its final permit decision.
Louisiana Revised Statutes 30:2014.3(B) provides that “[t]he applicant and any person who may become a party to an administrative or judicial proceeding to review the secretary’s decision on an application must raise all reasonably ascertainable issues and submit all reasonably available evidence supporting his position on the permit application pri- or to the issuance of the final decision by the department so that the evidence may be made a part of the administrative record for the application.” (Emphasis added). Louisiana Revised Statutes 30:2014.3(0 prohibits the admission of evidence that was not submitted to the department prior to issuance of a final decision or made a part of the administrative record for the application, unless good cause is shown for the failure to submit it. Subpart C also prohibits any party from raising an issue that was not submitted prior to the issuance of a final decision. When read together, subparts B and C clearly impose an affirmative duty on each interested party to act to preserve their right to appeal. The record indicates that City Parish failed to raise the issues complained of in its petition for judicial review prior to the issuance of LDEQ’s decision to grant the Permit, and therefore, City Parish failed to comply with La. R.S. 30:2014.3. Thus, we find that City Parish’s fourth assignment of error lacks merit.
|MDECREE
For the foregoing reasons, the judgment of the trial court is hereby affirmed. Costs of this appeal, in the amount of $4,253.00 are assessed to the appellant, City of Baton Rouge Parish of East Baton Rouge.
AFFIRMED.

. On May 13, 2009, LLA filed a request for an adjudicatory hearing on LDEQ’s denial of the 2006 Permit Application, which LDEQ denied. LLA then filed a petition for judicial
*16 review of LDEQ's decision with the trial court pursuant to La. R.S. 30:2050.21. The trial court remanded the proceeding to LDEQ for consideration of additional exhibits filed by LLA.
LDEQ once again denied the Application on December 14, 2010. R. 71. LLA sought relief, requesting that the trial court take judicial notice of LDEQ's 2009 Solid Waste Capacity Report. The trial court remanded the proceeding to LDEQ for consideration of the 2009 Capacity Report "and a determination by LDEQ if there is a basis for LDEQ to modify its findings and decisions to deny LLA's landfill permit application.”
On June 9, 2011, after remand, LDEQ reaffirmed its denial of the 2006 Permit Application. On July 25, 2011, the trial court affirmed LDEQ's denial. R. 71. LLA appealed to the First Circuit, which dismissed the appeal based on lack of subject matter jurisdiction because LLA had appealed under the wrong statutory basis. Louisiana Land Acquisition, LLC v. Louisiana Dept. of Environmental Quality, 2011-2037 (La.App. 1st Cir.7/18/12), 97 So.3d 1144. The Louisiana Supreme Court granted writs, and in a per curiam opinion, found no error in the First Circuit's conclusion. The Supreme Court then remanded the proceeding to the trial court "in the interests of justice,” instructing the trial court to convert the appeal to "an application for de novo review pursuant to La. R.S. 30:2024(C).” Louisiana Land Acquisition, 2012-1872 (La. 11/16/12), 103 So.3d 358.

. Pursuant to the Permit, the Landfill will be constructed on a 92.9 acre site located on the north side of Brooklawn Drive, approximately two miles west of Scenic Highway in Baton Rouge. Twenty-six acres will be devoted to waste disposal. The facility will receive up to 11,000 tons per week and 468,000 tons per year of industrial solid waste. The parishes to be serviced by the facility include East Baton Rouge, West Baton Rouge, East Felici-ana, West Feliciana, Iberville, and Ascension.

. City of East Baton Rouge, Parish of East Baton Rouge versus Louisiana Department of Environmental Quality, Docket No. 630,602, Section 24, 19th Judicial District Court.

. LEAN is a non-profit corporation serving as a statewide network of environmental and citizen member groups. LEAN works to preserve, protect and improve the state’s land, air, water, and other natural resources, with the purpose of protecting its members and other residents of Louisiana from threats of pollution. LEAN is domiciled in East Baton Rouge Parish and includes members who live, work, or recreate in the vicinity of the Landfill.

. Louisiana Environmental Network and Bertha L. Myles versus Louisiana Department of Environmental Quality, Docket No. 630,640, Section 26, 19th Judicial District Court.

. At a trial de novo in an administrative proceeding, the reviewing court is not limited to the record of the agency; it is free to make its own factual findings, exercise its own discretion and substitute its judgment for that of the administrative agency. Pardue v. Stephens, 558 So.2d 1149, 1161-62 (La.App. 1st Cir. 1989); Matter of Am. Waste & Pollution Control Co., 597 So.2d 1125, 1129 (La.App. 1st Cir.) writs denied sub nom., Matter of Am. Waste & Pollution Control Co., 604 So.2d 1309, 1310 (La.1992).

. The three landfills that LDEQ determined should not be factored into its decision regarding LLA’s 2013 Permit Application were excluded from the analysis for the following reasons: due to LLA’s restricted proposed service area in the 2013 Permit Application, there were no longer any potential service areas common to the Landfill proposed in the 2013 Permit Application and the River Birch Landfill; the current written policy governing the East Baton Rouge Parish North Landfill effectively precludes acceptance of industrial solid waste, amounting to a policy of not using their permitted capacity and reaffirming the need for a Type I facility in the proposed service area; and a major modification of Belle Landfill’s solid waste permit would be required before construction of the landfill could commence, due to a recent determination of the U.S. Army Corps of Engineers that nearly all of Belle’s property is wetlands.

. The Environmental Assessment, Statement contained in the 2013 Permit Application was different from the Environmental Assessment Statement contained in the 2006 Permit Application in several ways: it eliminated receipt by LLA of commercial waste streams from industrial facilities generated at industrial facilities but not as part of the industrial process; it reduced the proposed service area for the facility to the Parishes of East and West Feliciana, East and West Baton Rouge, Iberville and Ascension (deleting the parishes of St. James, Assumption and St. John the Baptist, which were included in the 2006 Permit Application), which necessarily altered LDEQ’s evaluation of the existing landfill capacity; it addressed the need for a landfill in LLA’s proposed service area that exclusively accepts third-party generated industrial solid waste; and it explained why the capacities of certain landfills are not available as alternative disposal sites for industrial solid waste generated in LLA’s proposed service area, although the landfills are permitted.