PARRO, J.
12Concerned Citizens for Livingston Parish, Inc., O’Neil Couvillion, Harold Wayne Breaud, and Louisiana Environmental Action Network (collectively, LEAN) sought judicial review, under the appellate jurisdiction of the district court, of an agency action, which approved an experimental operation for the development of new technologies and methods, as authorized by LAC 33:VII.117 (Section 117). The district court sustained the intervenor’s decli-natory exception pleading the objection of lack of subject matter jurisdiction and the defendant’s peremptory exception pleading the objection of no cause of action and dismissed the petition for judicial review. *1150 For the reasons that follow, we dismiss the appeal.
FACTUAL BACKGROUND AND PROCEDURAL HISTORY
Waste Management of Louisiana, L.L.C. (Waste Management) operates a Type I/ll landfill (Woodside Landfill) in Livingston Parish under a permit from the Louisiana Department of Environmental Quality (LDEQ). Waste Management had been operating at this location for over twenty-five years when it sought permission on July 2, 2010, from LDEQ for an experimental operation regarding its landfill. In particular, Waste Management submitted a request for approval to conduct a pilot study to recirculate leachate[1] at its Wood-side Landfill. The purpose of the pilot study was to determine if leachate recirculation would increase the rate of waste stabilization at the site.[2] Waste Management’s request was approved for a period of two years as an experimental operation for the development of new technologies and methods in accordance with Section 117 of LDEQ’s regulations concerning the disposal of solid waste. See LAC 33:VII.101 et seq.; see also LSA-R.S. 30:2011(D)(8).
LEAN filed a petition in the Nineteenth Judicial District Court, seeking judicial review of the action of LDEQ. LEAN contends it was notified of LDEQ’s approval on |sJanuary 5, 2011, and filed its petition for judicial review within thirty days. LDEQ responded to the petition by filing a peremptory exception pleading the objection of no cause of action. Waste Management intervened in the proceedings and filed a declinatory exception pleading the objection of lack of subject matter jurisdiction. After a hearing, the district court sustained both exceptions and dismissed LEAN’S petition, with prejudice, at its cost.[3] This appeal followed.
APPLICABLE LAW
A district court shall have appellate jurisdiction as provided by law. LSA-Const. art. V, § 16(B). Judicial review by a district court of a decision of an administrative agency, such as LDEQ, is an exercise of that court’s appellate jurisdiction in accordance with Article V, § 16(B). This is in contrast to the original jurisdiction granted to district courts in all civil matters by Article V, § 16(A) of the Louisiana Constitution. The grant of original jurisdiction refers to judicial adjudications in the first instance and designates the adjudicative tribunal in which the initial adjudication is made; it does not refer to judicial review of decisions of administrative agencies. Metro Riverboat Associates, Inc. v. Louisiana Gaming Control Bd., 01-0185 (La.10/16/01), 797 So.2d 656, 660; In re American Waste and Pollution *1151 Control, Co., 588 So.2d 367, 871 (La.1991). Therefore, for the purpose of judicial review of administrative action, district courts are courts of limited jurisdiction and only have appellate jurisdiction to review administrative decisions as provided by the legislature or constitution. Metro Riverboat Associates, Inc., 797 So.2d at 660. In addition, the existence of a specific statutory procedure generally implies a legislative intent that the special statutory procedure be the exclusive means of obtaining judicial review in the situations to which it applies. Id.
The Louisiana Environmental Quality Act, LSA-R.S. 30:2001, et seq., established LDEQ, which “shall be the primary agency in the state concerned with environmental protection and regulation.” LSA-R.S. 30:2011(A)(1). As such, LDEQ has jurisdiction Lover matters affecting the regulation of the environment within the state, including the regulation of solid waste disposal, and the regulation of those programs that encourage, assist, and result in the reduction of wastes generated within the state. See Id.
The Louisiana Environmental Quality Act and LDEQ’s rules and regulations specifically provide for certain procedures concerning the application for new permits and major modifications of existing permits, which would authorize the disposal of solid wastes, among other substances. See LSA-R.S. 30:2014, 2016, 2017, 2018, and 2024; see also LAC 33:VII.517 and 519. Under the established procedures, LDEQ has the authority to issue permits for solid waste disposal facilities, such as the Wood-side Landfill facility at issue. Moreover, LSA-R.S. 30:2050.21(A) authorizes an aggrieved person to devolutively appeal “a final permit action, a final enforcement action, or a declaratory ruling only to the Nineteenth Judicial District Court.”
In addition, Section 117 of the solid waste regulations allows LDEQ to authorize an applicant to test a new technology prior to submitting an application for a new permit or a modification of an existing permit, as long as the technology being tested will not result in the creation of significant health, safety, or environmental hazards, or nuisances. This section is not contained within the regulatory procedures addressing applications for new permits or modifications of existing permits, nor is there any corresponding statutory procedure in the Louisiana Environmental Quality Act.
Specifically, Section 117 provides:
A. This Section allows applicants to submit requests allowing for experimental operations for new technology (e.g., use of alternate daily cover) prior to submitting a permit application or modification. No experimental operations for new technologies shall be implemented without prior approval from the administrative authority.
B. Permission may be granted to facilitate experimental operations intended to develop new methods or technology providing strict conformity with these regulations is demonstrated in the request.
C. Experimental operations shall be considered only where significant health, safety, environmental hazards, or nuisances will not be created, and when a detailed proposal is submitted and accepted that sets forth the objectives, procedures, controls, monitoring, reporting, |fitime frame, and other data regarding the experimental operations.
D. Restrictions. Initial experimental operations shall be limited to a maximum of two years. However, the department may renew the request *1152 for additional time periods upon a showing by the person that the need for a continuance is valid.
The issue before both this court and the district court is whether LDEQ’s action in accordance with Section 117 is subject to judicial review.
ANALYSIS
It is undisputed that actions regarding experimental operations made pursuant to Section 117 do not qualify as final permit actions under LSA-R.S. 30:2024; therefore, they are not appealable to the district court in accordance with LSA-R.S. 30:2050.21(A).[4] Instead, LEAN argues that it is entitled to judicial review of LDEQ’s action pursuant to LSA-R.S. 49:964(A)(1) of the Louisiana Administrative Procedure Act (APA), which provides:
Except as provided in R.S. 15:1171 through 1177, a person who is aggrieved by a final decision or order in an adjudication proceeding is entitled to judicial review under this Chapter whether or not he has applied to the agency for rehearing, without limiting, however, utilization of or the scope of judicial review available under other means of review, redress, relief, or trial de novo provided by law. A preliminary, procedural, or intermediate agency action or ruling is immediately reviewable if review of the final agency decision would not provide an adequate remedy and would inflict irreparable injury.
According to LEAN, LDEQ’s approval of Waste Management’s request pursuant to Section 117 constitutes a “preliminary, procedural, or intermediate agency action” that is immediately reviewable, because review of the final agency action would not provide an adequate remedy and would inflict irreparable injury. This argument is without merit.
The interpretation of any statutory provision starts with the language of the statute itself. In re Succession of Faget, 10-0188 (La.11/30/10), 53 So.3d 414, 420. When the provision is clear and unambiguous and its application does not lead to absurd consequences, its language must be given effect, and its provisions must be | ^construed so as to give effect to the purpose indicated by a fair interpretation of the language used. Snowton v. Sewerage and Water Bd., 08-0399 (La.3/17/09), 6 So.3d 164, 168; see LSA-C.C. art. 9; LSA-R.S. 1:4. Unequivocal provisions are not subject to judicial construction and should be applied by giving words their generally understood meaning. Snowton, 6 So.3d at 168; see also LSA-C.C. art. 11; LSA-R.S. 1:3.
Words and phrases shall be read with their context and shall be construed according to the common and approved usage of the language. LSA-R.S. 1:3. Further, every word, sentence, or provision in a law is presumed to be intended to serve some useful purpose, that some effect is given to each such provision, and that no unnecessary words or provisions were employed. Colvin v. Louisiana Patient’s Compensation Fund Oversight Bd., 06-1104 (La.1/17/07), 947 So.2d 15, 19; Moss v. State, 05-1963 (La.4/4/06), 925 So.2d 1185, 1196. Consequently, courts are bound to give effect to all parts of a statute, if possible, and to construe no sentence, clause, or word as meaningless and surplusage, if a construction giving force to and preserving all words can legitimately be found. Colvin, 947 So.2d at 19-20; Moss, 925 So.2d at 1196.
By its express terms, LSA-R.S. 49:964(A)(1) provides a remedy to those *1153 aggrieved by “a final decision or order in an adjudication proceeding.” Louisiana Revised Statute 49:951(1) defines “adjudication” to mean the “agency process for the formulation of a decision or order.” In addition, LSA-R.S. 49:951(3) defines “decision” or “order” to mean:
[T]he whole or any part of the final disposition (whether affirmative, negative, injunctive, or declaratory in form) of any agency, in any matter other than rulemaking, required by constitution or statute to be determined on the record after notice and opportunity for an agency hearing, and including non-revenue licensing, when the grant, denial, or renewal of a license is required by constitution or statute to be preceded by notice and opportunity for hearing.
Although the phrase “preliminary, procedural, or intermediate agency action” is not defined, the phrase, as it is used in the context of LSA-R.S. 49:964(A)(1), can only refer to a preliminary, procedural, or intermediate agency action taken in the course of a single adjudication proceeding that leads to the issuance of a final decision or order as 17defined by the statutes. This is apparent from a review of the language of LSA-R.S. 49:964(A)(1), which provides that an immediate review of such preliminary, procedural, or intermediate agency actions is allowed only when “review of the final agency decision would not provide an adequate remedy and would inflict irreparable injury.” When reading LSA-R.S. 49:964(A)(1) as a whole, the “final agency decision” referred to in the second sentence of that provision can only be the “final decision or order in an adjudication proceeding” referred to in the first sentence of the provision. Clearly, therefore, LSA-R.S. 49:964(A)(1) contemplates that the aggrieved party can only seek judicial review of: (1) a final decision or order in an adjudication proceeding; or (2) a preliminary, procedural, or intermediate agency action made in the course of seeking a final agency decision in an adjudication proceeding, which is immediately reviewable because review of the final agency decision would not provide an adequate remedy and would inflict irreparable injury.
As noted previously, it is undisputed that actions regarding experimental operations made pursuant to Section 117 do not qualify as final permit actions under LSA-R.S. 80:2024. It is also clear that a decision made pursuant to Section 117 does not constitute a “final decision or order in an adjudication proceeding” within the meaning of the APA. A plain reading of Section 117(A) reveals that the provision enables LDEQ to authorize an applicant to submit requests allowing for experimental operations for new technology prior to submitting a permit application or modification. LDEQ may authorize such experimental operations only where significant health, safety, or environmental hazards, or nuisances will not be created and when a detailed proposal is submitted and accepted that sets forth the objectives, procedures, controls, monitoring, reporting, time frame, and other data regarding the experimental operations. LAC 33:VII.117(C). However, nowhere in Section 117, nor elsewhere in the solid waste regulations or in the Louisiana Environmental Quality Act, is a decision approving such a proposal required to be made on the record, after notice and opportunity for a hearing, as would be required for such a determination to qualify as a 18“fmal decision or order in an adjudication proceeding” under the provisions of the APA.
Furthermore, the procedure established by Section 117 is self-contained and is not part of a larger procedure leading to the issuance of a final decision by the agency. Pursuant to Section 117, the applicant may submit a request to test experimental operations for new technology for a limited period of time. The request may later be *1154 followed by an application for a permit or for modification of a permit; however, such applications are subject to separate proceedings and need not be preceded by a request pursuant to Section 117. Moreover, nothing in Section 117 requires that an initial request pursuant to that section be followed by an application for a permit or modification. Therefore, such a determination cannot be considered a preliminary, procedural, or intermediate agency action leading to the issuance of a final agency decision. Accordingly, there is no statutory authority granting appellate jurisdiction to the district court over this matter, and the district court was without subject matter jurisdiction to consider the petition for judicial review.[5]
CONCLUSION
For the foregoing reasons, we conclude that the district court properly determined that it was without subject matter jurisdiction to consider the petition for judicial review filed by Concerned Citizens for Livingston Parish, Inc., O’Neil Couvillion, Harold Wayne Breaud, and Louisiana Environmental Action Network in this matter. Because the district court lacked subject matter jurisdiction, this court also lacks subject matter jurisdiction to consider this appeal. Accordingly, the appeal is dismissed. All costs are assessed to Concerned Citizens for Livingston Parish, Inc., O’Neil Couvillion, Harold Wayne Breaud, and Louisiana Environmental Action Network.
APPEAL DISMISSED.
HIGGINBOTHAM, J., concurs.

. Leachate is the liquid that accumulates from and around nonhazardous solid waste.

. Leachate recirculation is a management technique in which the leachate from a landfill is reintroduced back into the landfill for reinfiltration into the solid waste. It is believed that the process promotes the degradation of waste, which results in a faster increase to the waste mass stability and an increase in the methane generation. This, in turn, settles the landfill faster, allowing the landfill to recapture more airspace for disposal of solid waste.

.When it filed its petition for review, LEAN also obtained an ex parte order from the district court, staying the effect of LDEQ’s action that authorized Waste Management to begin its experimental program of leachate recirculation. LDEQ and Waste Management filed motions to vacate the stay in the district court. Upon granting the exceptions and dismissing LEAN’S petition, the district court also lifted the stay.

. It is also undisputed that actions made pursuant to Section 117 do not qualify as final enforcement actions or declaratory rulings, for which an appeal to the district court is also authorized pursuant to LSA-R.S. 30:2050.21(A).

. Because we have determined that the district court properly determined that it was without subject matter jurisdiction to consider the petition for judicial review, we will not address the peremptory exception of no cause of action filed by LDEQ.