STATE OF LOUISIANA
COURT OF APPEAL
FIRST CIRCUIT

2019 CA 0283

FIRESTONE POLYMERS, LLC, AND
BRIDGESTONE AMERICAS TIRE OPERATIONS, LLC

VERSUS

THE LOUISIANA DEPARTMENT
OF ENVIRONMENTAL QUALITY, ET AL.

Decision Rendered: **NOV 1 5 2019**

* * * * * * *

APPEALED FROM THE
19th JUDICIAL DISTRICT COURT
EAST BATON ROUGE PARISH, LOUISIANA
DOCKET NUMBER 664,874, SECTION 25

HONORABLE WILSON E. FIELDS, JUDGE

* * * * * * *

Anne J. Crochet
Timothy J. Poche
Baton Rouge, Louisiana

Attorneys for Plaintiffs/Appellants
Firestone Polymers, LLC, and Bridgestone
Americas Tire Operations, LLC

David W. Leefe
Louis E. Buatt
Charles B. Wilmore
Court C. VanTassell
New Orleans, Louisiana

Attorneys for Defendants/Appellees
CITGO Petroleum Corporation,
Occidental Chemical Corporation,
and OXY USA, Inc.

Herman Robinson
Perry M. Theriot
Rodney Barnes
Oscar Magee
Baton Rouge, Louisiana

Attorneys for Defendant/Appellee
Louisiana Department of
Environmental Quality

BEFORE: McDONALD, THERIOT, and CHUTZ, JJ.

**McDONALD, J.**

The former and current owners of a rubber manufacturing facility filed a petition for judicial review in the district court challenging a Department of Environmental Quality remediation order finding, among other things, that the owners were partially responsible for remediation of a bayou near their facility and ordering them to take specified action. The district court determined it had no subject matter jurisdiction to review the remediation order and dismissed the owners' petition. The owners appealed the adverse judgment. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Firestone Polymers, LLC, CITGO Petroleum Corporation, Occidental Chemical Corporation, and OXY USA, Inc. own and/or operate facilities that discharge water into Bayou d'Inde, a nine-mile long bayou located west of Lake Charles, Louisiana. In 2003, a United States Environmental Protection Agency contractor issued a report indicating that Bayou d'Inde was being impacted by hazardous releases. Although CITGO, Occidental, and Oxy (CITGO/Oxy), as well as other entities not involved here, apparently agreed to participate in remediation efforts, Firestone claimed its discharge into Bayou d'Inde was minimal and refused to join a collective remediation venture. In a September 22, 2004 letter citing La. R.S. 30:2275, DEQ demanded that Firestone participate in the remediation of Bayou d'Inde and reimburse DEQ for costs incurred. After discussions with DEQ, Firestone responded by denying liability for the contamination.

In a November 28, 2006 letter citing La. R.S. 30:2275, DEQ again demanded that Firestone[1] participate in the Bayou d'Inde remediation, as well as the remediation of a ditch by which Firestone's discharge traveled to Bayou d'Inde (Firestone ditch), and again sought reimbursement of costs. DEQ's 2006 demand was apparently based on samplings taken in 2005 showing that polychlorinated biphenyls (PCBs) were present in the Firestone ditch. After discussions with DEQ, Firestone responded by denying liability for contamination of Bayou d'Inde or the Firestone ditch.

Almost ten years after its 2006 demand, DEQ again demanded, in a July 14, 2016 letter citing La. R.S. 30:2275, that Firestone and CITGO/Oxy participate in the remediation of

---

[1] Both the 2004 and 2006 DEQ demands referenced above were issued to Bridgestone/Firestone North American Tire Company, LLC.

2

Bayou d'Inde and the Firestone ditch and again sought reimbursement for costs. Firestone again denied liability.

On November 29, 2017, DEQ issued an Administrative Order for Remedial Action (DEQ Remediation Order) to Firestone and CITGO/Oxy addressing "final investigation and remediation" of Bayou d'Inde and the Firestone ditch. The DEQ Remediation Order stated that it "shall serve as an enforceable document"; made extensive purported "Findings of Fact" and then deemed Firestone and CITGO/Oxy to be responsible parties and contributing sources to the contamination in Bayou d'Inde; and "compel[led]" Firestone to participate in the bayou's remediation. The DEQ Remediation Order stated that unauthorized noncompliance with its terms would constitute a violation of La. R.S. Title 30, Chapter 12: Liability for Hazardous Substance Remedial Action; and, such violation would be considered grounds for enforcement actions, including, but not limited to, compliance orders and penalties.

In response to the DEQ Remediation Order, Firestone and Bridgestone Americas Tire Operations, LLC (Firestone/BATO), as current and former owners of the Firestone facility, filed three actions in the 19th Judicial District Court: (1) a petition for declaratory judgment essentially seeking a declaration that the DEQ Remediation Order violated the Louisiana Environmental Quality Act (LEQA), La. R.S. 30:2001, et seq.; (2) a petition seeking judicial review of DEQ's Remediation Order, under the LEQA and/or the Louisiana Administrative Procedure Act (LAPA), La. R.S. 49:950, et seq.; and, (3) a petition for de novo review under the LEQA, which Firestone/BATO filed after DEQ denied its request for an administrative hearing to address the Remediation Order.[2]

The subject of this appeal is Firestone/BATO's petition for judicial review of the DEQ Remediation Order. DEQ and CITGO/Oxy both filed declinatory exceptions objecting to the trial court's subject matter jurisdiction to review the DEQ Remediation Order. Firestone/BATO opposed the exceptions, and after a hearing, the district court signed a

---

[2] Firestone/BATO asserts that the trial court granted DEQ and CITGO/Oxy's exceptions of prematurity in the declaratory judgment action, dismissed its petition, and that its appeal from that judgment is currently pending before this court under our docket number 2019 CA 0308. The status of Firestone/BATO's petition for de novo review is unknown. Although we conclude here that the trial court correctly found it did not have appellate subject matter jurisdiction under La. R.S. 30:2050.21, we do not address whether the trial court had original subject matter jurisdiction in Firestone/BATO's declaratory judgment suit or its suit seeking de novo review.

3

judgment on December 3, 2018, granting the exceptions and dismissing Firestone/BATO's petition for judicial review. Firestone/BATO filed a writ application seeking a stay of the DEQ Remediation Order pending this appeal, which this court denied. *Firestone Polymers, LLC and Bridgestone Americas Tire Operations, LLC v. The Louisiana Department of Environmental Quality*, 18-1791 (La. App. 1 Cir. 2/11/19), 2019 WL 519883 (unpublished writ action).

On appeal, Firestone/BATO contends the district court erred in granting the exceptions of lack of subject matter jurisdiction.[3] It claims the district court had appellate jurisdiction to review the DEQ Remediation Order: (1) as a DEQ "final enforcement action" under the LEQA, and, alternatively, (2) as a DEQ "final decision or order" under the LAPA. In opposition, DEQ and CITGO/Oxy both contend the district court properly granted the exceptions, because the DEQ Remediation Order is merely an administrative "preliminary step" and does not constitute a LEQA final enforcement action nor a LAPA final decision or order, subject to judicial review.

**SUBJECT MATTER JURISDICTION**
**AND STANDARD OF REVIEW**

Subject matter jurisdiction is the legal power and authority of a court to hear and determine a particular class of actions or proceedings, based upon the object of the demand, the amount in dispute, or the value of the right asserted. La. C.C.P. art. 2. Subject matter jurisdiction is created by the constitution or by legislative enactment; the parties cannot confer or waive it. *See* La. C.C.P. art. 3; *McCann v. McCann*, 11-2434 (La. 5/8/12), 93 So.3d 544, 547. Generally, a district court shall have original jurisdiction over all civil and criminal matters and shall have appellate jurisdiction as provided by law. La. Const. art. V, §16. The grant of original jurisdiction refers to judicial adjudications in the first instance and designates the adjudicative tribunal in which the initial adjudication is made. *Louisiana Environmental Action Network v. Louisiana Department of Environmental Quality*, 11-1935 (La. App. 1 Cir. 7/25/12), 97 So.3d 1148, 1150. Conversely, the grant of appellate jurisdiction is limited, and district courts have appellate jurisdiction only as expressly provided by the constitution or a

---

[3] CITGO/Oxy also filed a dilatory exception of prematurity in the instant suit, which the trial court granted in the December 3, 2018 judgment. On appeal, Firestone/BATO challenges the judgment insofar as it grants both exceptions. Based on our affirmance of the district court's judgment based on a lack of subject matter jurisdiction, we need not address the prematurity exception.

4

statute. *See Id.,* 97 So.3d at 1151. Further, the existence of a specific statutory procedure generally implies a legislative intent that the special statutory procedure be the exclusive means of obtaining judicial review in the situations to which it applies. *Id.,* 97 So.3d at 1151; *see also Quatrevingt v. State through Landry,* 17-0884 (La. App. 1 Cir. 2/8/18), 242 So.3d 625, 636, *writ denied,* 18-0391 (La. 4/27/18), 239 So.3d 837.

An objection of no subject matter jurisdiction is raised by a declinatory exception. La. C.C.P. art. 925A(6). At the hearing on the declinatory exception, evidence may be introduced to support or controvert the objection, when the grounds thereof do not appear from the petition. *See* La. C.C.P. art. 930. Here, Firestone/BATO introduced evidence at the exception hearing. Neither DEQ nor CITGO/Oxy introduced evidence at the exception hearing. Thus, on review, we consider the factual allegations of Firestone/BATO's petition and the four exhibits Firestone/BATO introduced.[4] We do not consider attachments to any party's memoranda, because evidence not properly introduced shall not be considered, even if it is physically placed in the record. *See Beasley v. Nezi, LLC,* 16-1080 (La. App. 1 Cir. 9/8/17), 227 So.3d 308, 312 n.1; *Park W. Children's Fund, Inc. v. Trinity Broad. Network, Inc.,* 13-444 (La. App. 3 Cir. 10/16/13), 156 So.3d 682, 686. When evidence is introduced at the hearing on an objection of no subject matter jurisdiction, relevant factual findings are governed by the manifest error standard of review. *Barringer v. Robertson,* 15-0698 (La. App. 1 Cir. 12/2/15), 216 So.3d 919, 924. However, no deference is due to conclusory factual allegations or allegations of law. *See Beasley,* 227 So.3d at 312.

## INTERPRETATION OF THE LEQA

Firestone/BATO first argues the district court erred in determining it did not have appellate subject matter jurisdiction to review the DEQ Remediation Order. According to Firestone/BATO, the DEQ Remediation Order, issued under LEQA Chapter 12, is appealable as a "final enforcement action" under LEQA Chapter 2-A.

The interpretation of any statutory provision starts with the language of the statute

---

[4] The exceptions hearing concerned exceptions filed in this suit as well as exceptions filed in Firestone/BATO's declaratory judgment suit, appealed to this court under our docket number 2019 CA 0308. The evidence introduced at the hearing is included in the 2019 CA 0308 appellate record but was not included in the instant record. Under La. C.C.P. art. 2132, and with no objection from the parties, we correct this omission of a material part of the trial record.

itself. *Caldwell Parish School Bd. v. La. Machinery Co., LLC,* 12-1383 (La. 1/29/13), 110 So.3d 993, 996; *Louisiana Environmental Action Network,* 97 So.3d at 1152. Words and phrases shall be read with their context. La. R.S. 1:3. Every provision in a law is presumed to serve a useful purpose and to have some effect; it is also presumed that the legislature used no unnecessary words or provisions. *See Louisiana Environmental Action Network,* 97 So.3d at 1152. Consequently, courts are bound to give effect to all parts of a statute, if possible, and to construe no sentence, clause, or word as meaningless or surplusage, if a construction giving force to and preserving all words can legitimately be found. *Id.* Further, laws on the same subject matter must be interpreted in reference to each other. La. C.C. art. 13.

Under the LEQA, DEQ is the primary agency in the state concerned with environmental protection and regulation. La. R.S. 30:2011A(1). The DEQ Secretary has the power to issue such orders or determinations as may be necessary to effectuate the purpose of the LEQA. La. R.S. 30:2011D(6). In LEQA Chapter 12, the "Liability for Hazardous Substance Remedial Action" chapter (La. R.S. 30:2271-2290), the legislature has given DEQ the power to identify locations where past hazardous substance discharges may have occurred, to provide DEQ a mechanism to insure that the costs of remedial actions are borne by those who contributed to the discharge, and to allow DEQ to respond as quickly as possible to such discharges while retaining the right to institute legal actions against those responsible for remedial costs. *See* La. R.S. 30:2271B; *Margone, LLC v. Addison Resources, Inc.,* 04-70 (La. App. 3 Cir. 12/15/04), 896 So.2d 113, 116-17.

When the DEQ Secretary determines that a hazardous substance discharge has occurred or is about to occur, which may present an imminent and substantial danger to health or the environment, he shall make a written demand on every responsible person[5] who has participated in the discharge to undertake remedial actions at the site, according to an approved plan, or to pay the DEQ Secretary for remedial action costs. *See* La. R.S. 30:2275A; *Margone, LLC,* 896 So.2d at 117. The order for remedial action shall prescribe a reasonable time for reply. If, after that time, the DEQ Secretary receives no reply or a

---

[5] Persons who must comply with the requirements of LEQA Chapter 12 are listed in La. R.S. 30:2273.

6

refusal to comply with the demand, he shall institute a suit in the district court of proper venue demanding that the defendants bear the remedial costs at the site, or asking the court to issue an order that the site be closed, or any other order necessary to abate, contain, or remove the hazard. *See* La. R.S. 30:2275B. An action filed under LEQA Chapter 12 must be commenced within ten years from the date of the discovery of the discharge for which remedial action must be undertaken, or three years from the date the DEQ Secretary issues the remediation order, whichever comes later. La. R.S. 30:2276H(1). In response to the DEQ Secretary's suit under LEQA Chapter 12, a defendant may assert numerous defenses to liability for hazardous substance discharge. *See* La. R.S. 30:2277.

Separate from its authority to issue remediation orders under LEQA Chapter 12, DEQ can also take "enforcement actions" under LEQA Chapter 2-A, "Enforcement Procedure and Judicial Review," La. R.S. 30:2050.1-2050.31.[6] LEQA Chapter 2-A does not define the term "enforcement action," but it appears to at least include compliance orders, penalty assessments, permit suspensions, cease and desist orders, and settlements or compromises. *See* La. R.S. 30:2050.1C; 30:2050.2; 30:2050.3; 30:2050.4H; 30:2050.7; and 30:2050.8. Before any enforcement action can be appealed to the 19th JDC under La. R.S. 30:2050.21A, it must be a "final enforcement action."[7] Chapter 2-A specifically states when a compliance order and a penalty assessment become final enforcement actions, but it does not clearly state when other types of enforcement actions become final, and as such, appealable. *See* La. R.S. 30:2050.2C, 2050.3D, and 2050.4H. Notably, LEQA Chapter 2-A does not mention remediation orders.

After reviewing the above statutory provisions, the DEQ Remediation Order, and mindful that a district court only has appellate jurisdiction as expressly provided by constitution or a statute, we decline to find that the DEQ Remediation Order in this case is a "final enforcement action" appealable under La. R.S. 30:2050.21. Rather, under applicable rules of statutory interpretation, we conclude that, for purposes of this appeal, the specific

---

[6] Under La. R.S. 30:2025, the DEQ also has the authority to institute "[a]ny civil action" necessary to carry out the provisions of the LEQA.

[7] An aggrieved person may also appeal a final permit action and a declaratory ruling to the 19th JDC under La. R.S. 30:2050.21. *See City of Baton Rouge v. La. Dept. of Environmental Quality*, 14-1485 (La. App. 1 Cir. 4/28/15), 172 So.3d 13, 18. On appeal, Firestone/BATO does not contend the DEQ Remediation Order is a final permit action or a declaratory ruling.

statutory procedure set forth in LEQA Chapter 12 provides the means by which Firestone/BATO can challenge the DEQ Remediation Order.

We are bound to give effect to all parts of the LEQA and to presume that each part of the statute has purpose and effect. *Louisiana Environmental Action Network*, 97 So.3d at 1152. The existence of a specific procedure in LEQA Chapter 12 to challenge a remediation order implies that the appellate provisions of LEQA Chapter 2-A do not apply. *See Louisiana Land Acquisition, LLC v. La. Dept. of Environmental Quality*, 11-2037 (La. App. 1 Cir. 7/18/12), 97 So.3d 1144, 1148 (finding a more specific LDEQ provision applicable over a more general LEQA provision). If the legislature intended that a remediation order issued under LEQA Chapter 12 be appealable under LEQA Chapter 2-A, the legislature could have expressly provided that the term "final enforcement action" in LEQA Chapter 2-A includes a remediation order. The existence of a district court's appellate jurisdiction must be expressly provided, and LEQA Chapter 2-A does not provide such in this case.

Rather, when read in context and construing the LEQA to give effect to all parts, we conclude that the specific statutory procedure provided in LEQA Chapter 12 implies a legislative intent that the suit filed under La. R.S. 30:2275B is the appropriate means by which Firestone/BATO is to challenge the DEQ Remediation Order. Thus, although the DEQ Remediation Order states that it is "an enforceable document," its terms are indeed *not* enforceable against Firestone/BATO until after DEQ files the suit required by La. R.S. 30:2275B, and that suit has been tried.[8] Further, despite the Remediation Order's extensive "Findings of Fact" and ominous statement that unauthorized non-compliance with its terms would constitute a violation of LEQA Chapter 12, none of DEQ's characterizations or factual assertions are binding on Firestone/BATO nor are they due deference by the district court at the trial held under La. R.S. 30:2276.

Rather, in the La. R.S. 30:2276 trial, as an exercise of its original jurisdiction, the district court will be the tribunal where the initial adjudication is made regarding: (1) whether Firestone/BATO is liable to the State for remedial action (La. R.S. 30:2276A); and, only if so,

---

[8] It is undisputed that DEQ did not file suit after issuing the 2004 or the 2006 letters, wherein it demanded under La. R.S. 30:2275 that Firestone/BATO participate in the remediation of Bayou d'Inde and the Firestone ditch. It is also undisputed that, after issuing the similar 2016 demand letter and the 2017 DEQ Remediation Order, DEQ filed suit against Firestone/BATO in April 2019 in the 14th Judicial District Court.

(2) the proportionate contribution of remedial costs and/or penalties for which Firestone/BATO is liable based on evidence presented to the court (La. R.S. 30:2276C through 30:2276F). Before the district court can decide these factual matters, DEQ will have the opportunity to present evidence that Firestone/BATO is liable under La. R.S. 30:2276, and Firestone/BATO will have the opportunity to present defenses to the suit as provided in La. R.S. 30:2277.

## INTERPRETATION OF THE LAPA

Alternatively, Firestone/BATO contends the DEQ Remediation Order is appealable as a "final decision or order" under the LAPA, because the DEQ Remediation Order deprives Firestone/BATO of constitutionally protected property interests, including the payment of oversight costs to DEQ. As discussed above, the DEQ Remediation Order is not binding on Firestone/BATO, because the district court has not made a determination under La. R.S. 30:2276 that Firestone/BATO is liable for remediation costs. Thus, the non-binding DEQ Remediation Order cannot deprive Firestone/BATO of any constitutionally protected property interest, and the district court did not have appellate jurisdiction to review it under the LAPA.

## CONCLUSION

For the above reasons, we conclude the district court properly determined it had no subject matter jurisdiction to consider the petition for judicial review filed by Firestone Polymers, LLC, and Bridgestone Americas Tire Operations, LLC, in this matter. We affirm the December 3, 2018 judgment, which dismissed the petition. All costs are assessed to Firestone Polymers, LLC and Bridgestone Americas Tire Operations, LLC.

**AFFIRMED.**