STATE OF LOUISIANA

FIRST CIRCUIT

NO. 2019 CA 1551

LOUISIANA ENVIRONMENTAL ACTION NETWORK, INC.

VERSUS

LOUISIANA DEPARTMENT OF ENVIRONMENTAL QUALITY

*Judgment Rendered:* **SEP 2 3 2020**

* * * * * * * *

Appealed from the
19th Judicial District Court
In and for the Parish of East Baton Rouge
State of Louisiana
Case No. C679626

The Honorable Trudy M. White, Judge Presiding

* * * * * * * *

| | |
|---|---|
| Clay Garside<br>New Orleans, Louisiana | Counsel for Plaintiff/Appellant<br>Louisiana Environmental Action<br>Network, Inc. |
| Herman Robinson<br>Courtney J. Burdette<br>Jill R. Carter<br>Baton Rouge, Louisiana | Counsel for Defendant/Appellee<br>Louisiana Department of Environmental<br>Quality |
| Lawrence R. Demarcay, III<br>Beverly Klundt Baudouin<br>New Orleans, Louisiana | Counsel for Defendant/Appellee<br>TD*X Associates, L.P. |

* * * * * * * *

BEFORE: McDONALD, THERIOT, AND CHUTZ, JJ.

Chutz, J. concurs

**THERIOT, J.**

In this suit arising from a decision of the Louisiana Department of Environmental Quality ("LDEQ"), the plaintiff has appealed the district court's dismissal of its petition for judicial review for lack of subject matter jurisdiction and failure to state a cause of action. For the reasons set forth herein, we affirm.

## LOUISIANA HAZARDOUS WASTE RULES AND REGULATIONS

The LDEQ, under the authority granted by the Louisiana Hazardous Waste Control Law, La. R.S. 30:2171 et seq., has adopted rules and regulations regarding hazardous waste and hazardous materials in order to: (1) protect the health and well-being of the people of the state of Louisiana and prevent damage to property or to the environment by the improper management of hazardous waste; (2) provide incentives for the maximum recovery and reuse of substances in hazardous waste streams that are possible through the use of the most advanced technology; (3) carefully consider the impact of the program on the economic vitality of the state and achieve a proper balance that protects the health of the citizens and the environment of the state while meeting the needs of industry; and (4) establish minimum state standards that define the acceptable management of hazardous waste. LAC 33:V.103. The scope of these rules and regulations, which are contained in Title 33, Part V of the Louisiana Administrative Code, is set forth in LAC 33:V.105, which states in pertinent part:

> These rules and regulations apply to owners and operators of all facilities that generate, transport, treat, store, or dispose of hazardous waste, except as specifically provided otherwise herein. . . . Definitions appropriate to these rules and regulations, including *solid waste* and *hazardous waste*, appear in LAC 33:V.109. Wastes that are excluded from regulation are found in this Section.

Thus, in order to be subject to the rules and regulations of Title 33, Part V, a material must be classified as a hazardous waste. Section 109 defines a hazardous waste as a solid waste (as defined therein) that meets certain criteria. Solid waste

2

is defined in §109 as "any discarded material that is not excluded by LAC 33:V.105.D.1 or that is not excluded by a variance or non-waste determination granted under LAC 33:V.105.K or O."

Subsection 105.D.1 contains a list of materials that are excluded from regulation because they are not solid waste. One such exclusion, added to the regulations by amendment on June 20, 2017, is §105.D.1.y, which provides that hazardous secondary material[1] that is generated and then transferred to a verified reclamation facility ("VRF") for the purpose of reclamation is not a solid waste if certain conditions are satisfied. One condition that must be satisfied in order for this exclusion to apply is that the hazardous secondary material generator must arrange for the transport of the hazardous secondary materials to a VRF. According to this provision, a VRF is either (1) a facility that has been granted a variance under LAC 33:V.105.O.2.d[2] or (2) a reclamation facility where the

---

[1] "Hazardous Secondary Material" is "a secondary material (e.g., spent material, by-product, or sludge) that, when discarded, would be identified as hazardous waste under LAC 33:V.Subpart 1." LAC 33:V.109.

[2] Subsection 105.O.2.d provides that the administrative authority may grant requests for a variance from classifying as a solid waste those hazardous secondary materials that are transferred for reclamation under LAC 33:V.105.D.1.y and are managed at a verified reclamation facility or intermediate facility where the management of the hazardous secondary materials is not addressed under a RCRA part B permit or interim status standards. The criteria to be considered by the administrative authority when reviewing such a variance request include:

i. the reclamation facility or intermediate facility shall demonstrate that the reclamation process for the hazardous secondary materials is legitimate pursuant to LAC 33:V.105.R;

ii. the reclamation facility or intermediate facility shall satisfy the financial assurance as required under subpart H of 40 CFR part 261, July 2015, which is hereby incorporated by reference;

iii. the reclamation facility or intermediate facility shall not be subject to a formal enforcement action in the previous three years and not be classified as a significant non-complier under RCRA subtitle C, or must provide credible evidence that the facility will manage the hazardous secondary materials properly. Credible evidence may include a demonstration that the facility has taken remedial steps to address the violations and prevent future violations, or that the violations are not relevant to the proper management of the hazardous secondary materials;

iv. the intermediate or reclamation facility shall have the equipment and trained personnel needed to safely manage the hazardous secondary material and shall meet emergency preparedness and response requirements under 40 CFR part 261, subpart M, July 1, 2017, which is hereby incorporated by reference;

v. if residuals are generated from the reclamation of the excluded hazardous secondary materials, the reclamation facility shall have the permits required (if any) to manage the residuals, have a contract with an appropriately permitted facility to dispose of the residuals or present credible evidence that the residuals will be managed in a manner that is protective of human health and the environment; and

vi. the intermediate or reclamation facility must address the potential for risk to proximate populations from unpermitted releases of the hazardous secondary material to the

3

management of hazardous secondary materials is addressed under a Resource Conservation and Recovery Act ("RCRA") part B permit or interim status standards. LAC 33:V.105.D.1.y.v.(b). Thus, where the generator of hazardous secondary materials transports the hazardous secondary materials to a facility that has been granted a variance under LAC 33:V.105.O.2.d for reclamation, the hazardous secondary material is not solid waste, and as such, not hazardous waste, and therefore not subject to the rules and regulations applicable to hazardous waste.

The procedure for obtaining a VRF variance from classification as a solid waste is set forth in LAC 33:V.105.K.2. Under these provisions, the applicant must apply to the administrative authority[3] for a variance from classification as a solid waste, addressing the relevant criteria set forth in LAC 33:V.105.O as applicable. LAC 33:V.105.K.2.a. Thereafter, the administrative authority will evaluate the application and issue a draft notice tentatively granting or denying the application. Notification of this tentative decision will be provided by newspaper advertisement and/or radio broadcast in the locality where the recycler is located. The administrative authority will accept comments on the tentative decision for 30 days and may also hold a public hearing upon request or at his discretion. The administrative authority will issue a final decision after receipt of comments and after a hearing (if any). LAC 33:V.105.K.2.b.

## FACTS AND PROCEDURAL HISTORY

On October 26, 2017, Thermaldyne, LLC submitted a request to the LDEQ for a VRF Variance. After considering Thermaldyne's submittal and the

---

environment (i.e., releases that are not covered by a permit, such as a permit to discharge to water or air), which may include, but are not limited to, potential releases through surface transport by precipitation runoff, releases to soil and groundwater, wind-blown dust, fugitive air emissions, and catastrophic unit failures), and must include consideration of potential cumulative risks from other nearby potential stressors.

LAC 33:V.105.O.2.d.

[3] The administrative authority is the Secretary of the LDEQ or his designee or the appropriate assistant secretary or his designee. LAC 33:V.109.

4

information provided, the LDEQ published its "Draft Decision Document to Grant Variance from Classification as a Solid Waste for a Verified Reclamation Facility" on June 21, 2018 and June 25, 2018, which provided a July 30, 2018 deadline for submitting comments and requests for public hearing or notification of the final decision to the LDEQ. Comments were received from a number of sources, including plaintiff/appellant, Louisiana Environmental Action Network ("LEAN"), a Louisiana nonprofit corporation interested in environmental protection, and TD*X Associates, LP ("TD*X"), a business competitor of Thermaldyne, and the LDEQ prepared written responses to the comments. On January 10, 2019, the LDEQ issued its final decision granting Thermaldyne's request for a VRF Conditional Exclusion and Variance from Classification as a Solid Waste ("VRF/Variance"), noting its conclusion that Thermaldyne's proposed facility meets all criteria required to be granted a variance to operate as a VRF and that approval of the variance request will encourage the reclamation of oil-bearing hazardous secondary materials by providing more management options for petroleum refineries by increasing the availability of reclamation options for oil-bearing hazardous secondary materials. The VRF/Variance allows Thermaldyne to reclaim crude oil contained in oil-bearing hazardous secondary materials and return the recovered oil back to petroleum refining facility production, subject to certain conditions set forth in the VRF/Variance and the applicable regulations contained in LAC 33:V.Subpart 1. The VRF/Variance specifically states that it does not constitute LDEQ approval for any activity or process that may require a permit.

On February 19, 2019, LEAN filed a "Petition for Judicial Review and Revocation of Final Permit Decisions," asking the district court to either vacate the LDEQ's action approving the VRF/Variance as unlawful or remand the matter back to the LDEQ with an order requiring it to hold a public hearing on the

5

variance, conduct an IT analysis[4] that fulfills its public trustee obligations, and respond fully to the public comments on the VRF/Variance request. LEAN's petition also sought judicial review of the LDEQ's decision regarding a minor source air permit.[5] Thermaldyne intervened in the suit in order to protect its interests in the VRF/Variance and the minor source air permit. Prior to the filing of LEAN's petition, TD*X filed a petition seeking judicial review of the LDEQ's approval of Thermaldyne's VRF/Variance request. On LEAN's motion, its suit was transferred to the same division of court where TD*X's petition on the same subject was already pending.

The LDEQ filed a declinatory exception of lack of subject matter jurisdiction and a peremptory exception of no cause of action as to both plaintiffs' petitions, as well as a peremptory exception of no right of action as to TD*X's petition. A hearing was held on the exceptions on May 29, 2019, following which the district court concluded that the VRF/Variance was neither a permit, nor a final action, and sustained the LDEQ's exceptions of lack of subject matter jurisdiction, no cause of action, and no right of action. The district court dismissed TD*X's petition for judicial review with prejudice and dismissed LEAN's appeal of the LDEQ's action in granting the VRF/Variance to Thermaldyne with prejudice.

The judgment was certified as a final appealable judgment under La. C.C.P. art. 1915(B), and LEAN appealed, arguing (1) the district court erred in granting

---

[4] "IT analysis" refers to the IT Corporation, the applicant for a major hazardous waste disposal facility in *Save Ourselves, Inc. v. La. Environmental Control Commission*, 452 So.2d 1152 (La. 1984). In *Save Ourselves, Inc.*, the Louisiana Supreme Court interpreted Article IX, Section 1 of the Louisiana Constitution to impose a "rule of reasonableness," requiring LDEQ to determine, before granting approval of any proposed action affecting the environment, that adverse environmental impacts have been minimized or avoided as much as possible, consistent with the public welfare. The court set forth a number of factors to be considered by LDEQ when conducting an IT cost-benefit analysis to determine whether to grant or deny a permit, which were later condensed into three categories: (1) whether the potential and real adverse environmental effects of the proposed project have been avoided to the maximum extent possible; (2) whether a cost-benefit analysis of the environmental impact costs balanced against the social and economic benefits of the project demonstrate that the latter outweighs the former; and (3) whether there are alternative projects or alternative sites or mitigating measures which would offer more protection to the environment than the proposed project without unduly curtailing non-environmental benefits to the extent applicable. *Louisiana Environmental Action Network v. Louisiana Dept. of Environmental Quality*, 09-1244 (La.App. 1 Cir. 2/8/10), 2010WL431500, *4-5 (unpublished); *Matter of Rubicon, Inc.*, 95–0108, p. 12 (La.App. 1 Cir. 2/14/96), 670 So.2d 475, 483; *Save Ourselves, Inc.*, 452 So.2d at 1157.

[5] The minor source air permit is not an issue in the present appeal.

6

the exception of lack of subject matter jurisdiction because LDEQ's unlawful decision to issue Thermaldyne a variance in lieu of a typical hazardous waste permit is reviewable by the courts, and (2) the district court erred in granting LDEQ's exception of no cause of action because the law affords a remedy for LDEQ's unlawful decision to issue a variance in lieu of a typical hazardous waste permit.[6]

## DISCUSSION

Subject matter jurisdiction is the legal power and authority of a court to hear and determine a particular class of actions or proceedings, based upon the object of the demand, the amount in dispute, or the value of the right asserted. La. C.C.P. art. 2. Subject matter jurisdiction is created by the constitution or by legislative enactment; the parties cannot confer or waive it. See La. C.C.P. art. 3; *Firestone Polymers, LLC v. Louisiana Department of Environmental Quality*, 19-0283, p. 4 (La.App. 1 Cir. 11/15/19), 291 So.3d 228, 232, *writ denied*, 20-00131 (La. 3/9/20), 294 So.3d 482. Generally, a district court shall have original jurisdiction over all civil and criminal matters and shall have appellate jurisdiction as provided by law. La. Const, art. V, § 16. The grant of original jurisdiction refers to judicial adjudications in the first instance and designates the adjudicative tribunal in which the initial adjudication is made. *Louisiana Environmental Action Network v. Louisiana Department of Environmental Quality*, 11-1935, p. 3 (La.App. 1 Cir. 7/25/12), 97 So.3d 1148, 1150, *writ denied*, 12-1926 (La. 11/9/12), 100 So.3d 842. Conversely, the grant of appellate jurisdiction is limited, and district courts have appellate jurisdiction only as expressly provided by the constitution or a statute. See *Id.*, 11-1935 at p. 3, 97 So.3d at 1151. Further, the existence of a specific statutory procedure generally implies a legislative intent that the special statutory procedure be the exclusive means of obtaining judicial review in the situations to

---

[6] The dismissal of TD*X's petition for judicial review was also appealed to this court under a separate docket number.

which it applies. *Id.*; <u>see also</u> *Quatrevingt v. State through Landry*, 17-0884, p. 14 (La.App. 1 Cir. 2/8/18), 242 So.3d 625, 636, *writ denied*, 18-0391 (La. 4/27/18), 239 So.3d 837.

An objection to the lack of subject matter jurisdiction is raised by a declinatory exception. La. C.C.P. art. 925A(6). At the hearing on the declinatory exception, evidence may be introduced to support or controvert the objection, when the grounds thereof do not appear from the petition. <u>See</u> La. C.C.P. art. 930. Where, as in the present case, no evidence is introduced at the hearing on the exception, the court must accept the allegations of the petition as true for the purpose of ruling on the exception. However, this rule applies only to properly-pled material allegations of fact; the court is not required to accept conclusory allegations or allegations of law as true for purposes of the exception. *Beasley v. Nezi, LLC*, 16-1080, p. 4 (La.App. 1 Cir. 9/8/17), 227 So.3d 308, 311-12. The district court's determination of whether it has subject matter jurisdiction over a case is subject to de novo review. *In re D.C.M.*, 13-0085, p. 7 (La.App. 1 Cir. 6/11/13), 170 So.3d 165, 169, *writ denied*, 13-1669 (La. 7/17/13), 118 So.3d 1102.

LEAN's petition alleges that the district court has subject matter jurisdiction over its petition for judicial review under La. R.S. 30:2050.21 and La. R.S. 49:964.

Louisiana Revised Statutes 30:2050.21 provides for judicial review of LDEQ decisions. Under this provision, a person aggrieved by a final permit action, a final enforcement action, or a declaratory ruling may appeal devolutively to the Nineteenth Judicial District Court. La. R.S. 30:2050.21(A); *City of Baton Rouge v. Louisiana Department of Environmental Quality*, 14-1485, p. 8 (La.App. 1 Cir. 4/28/15), 172 So.3d 13, 18. LEAN argues that the issuance of the VRF/Variance was a final permit action, and therefore appealable to the district court under the judicial review provisions of La. R.S 30:2050.21. Although "final permit action" is not defined in the statute, "permit" is defined for purposes of the

hazardous waste rules and regulations as "the permit issued by the state of Louisiana to a facility to treat, store, and/or dispose of hazardous waste under the conditions specified in the permit and the conditions required by the [Louisiana Environmental Quality Act, La. R.S. 30:2001, et seq.] and these regulations." LAC 33:V.109. No permit to treat, store, and/or dispose of hazardous waste is required for a party who obtains a VRF/Variance, since the hazardous secondary material transported to the facility under the VRF/Variance is specifically excluded from classification as a hazardous waste by the regulations. LAC 33:V.105. Nevertheless, LEAN argues that even if the VRF/Variance is not technically a "permit," the LDEQ's decision to issue it is still a final permit action because it exempts Thermaldyne from the requirement to obtain a hazardous waste permit. We disagree. As noted above, a district court only has appellate jurisdiction as expressly provided by the constitution or a statute. *Louisiana Environmental Action Network*, 11-1935 at p. 3, 97 So.3d at 1151. If the legislature intended to confer appellate jurisdiction on the district court in instances where no permit is required, it certainly could have done so by including such language in the statute. The existence of a district court's appellate jurisdiction must be expressly provided, and La. R.S. 30:2050.21 does not provide such. See *Firestone*, 19-0283 at p. 8, 291 So.3d 235.

LEAN next argues that the district court has appellate jurisdiction under the Administrative Procedure Act. Louisiana Revised Statutes 49:964 provides for judicial review by a district court of an agency's final decision or order in an adjudication proceeding. However, the Administrative Procedure Act's judicial review provisions are not intended to supersede specific provisions of other administrative acts, or to supersede the rights and remedies created under those acts. When the agency statute upon which a litigant relies establishes a specific procedure for judicial review of the agency's action, a litigant may invoke the

9

reviewing court's jurisdiction only by following the statutorily-prescribed procedure, unless there can be found within the act a genuine legislative intent to authorize judicial review by other means. *Metro Riverboat Assocs., Inc. v. Louisiana Gaming Control Bd.*, 1999-0863 (La. App. 1 Cir. 12/20/00), 774 So. 2d 1193, 1198 (*on rehearing en banc*), *vacated in part*, 01-0185 (La. 10/16/01), 797 So.2d 656; see also *Corbello v. Sutton*, 446 So.2d 301, 303 (La. 1984). Furthermore, La. R.S. 49:964 provides for judicial review of a final decision or order in an <u>adjudicatory proceeding</u>. "Adjudication" is defined as the agency process for the formulation of a decision or order. La. R.S. 49:951(1). "Decision" or "order" means the whole or any part of the final disposition (whether affirmative, negative, injunctive, or declaratory in form) of any agency, in any matter other than rulemaking, required by constitution or statute to be determined on the record after notice and opportunity for an agency hearing, and including non-revenue licensing, when the grant, denial, or renewal of a license is required by constitution or statute to be preceded by notice and opportunity for hearing. La. R.S. 49:951(3). An adjudication for purposes of La. R.S. 49:964 means an agency proceeding that results in a disposition that is required by constitution or statute to be made after notice is given and a hearing is held. Unless the constitution or a statute requires a hearing and notice, an agency action is not an adjudication for purposes of judicial review under La. R.S. 49:964. *Tomorrow's Investors, LLC ex rel. Jones v. State ex rel. Louisiana Gaming Control Bd.*, 11-1616 (La.App. 1 Cir. 3/23/12), 92 So.3d 364, 368, *writ denied*, 12-0886 (La. 6/1/12), 90 So.3d 444; *Delta Bank & Trust v. Lassiter*, 383 So.2d 330, 333 (La. 1980). In this case, the regulations concerning the granting of a VRF variance do not require a hearing; they say that a hearing *may* be held at the agency's discretion. LAC 33:V.105.K.2.b. Thus, there has not been a final decision or order issued in an

adjudicatory proceeding, and judicial review under La. R.S. 49:964 is not available.[7]

Having found that the district court did not err in concluding that the LDEQ decision to issue the VRF/Variance to Thermaldyne was not a final permit action or a final decision or order in an adjudicatory proceeding, we agree that the district court lacked jurisdiction under either La. R.S. 30:2050.21 or La. R.S. 49:964 over this matter. Further, because we find that no subject matter jurisdiction existed, and having found that the trial court did not err in dismissing LEAN's appeal of the VRF/Variance on that ground, LEAN's assignment of error regarding the exception of no cause of action is moot.

## CONCLUSION

The judgment of the district court dismissing LEAN's petition for judicial review of the VRF/Variance is affirmed. Costs of this appeal are assessed to plaintiff/appellant, Louisiana Environmental Action Network, Inc.

**AFFIRMED.**

---

[7] LEAN further argues that jurisdiction should nevertheless exist for judicial review under the Administrative Procedure Act because the LDEQ promulgated the regulations that make a hearing discretionary and therefore prevent this process from being an adjudicatory proceeding. However, an objection to the regulations promulgated by the LDEQ does not confer jurisdiction where none exists. The interpretation or application of the LDEQ regulations may be challenged by a petition for rulemaking (LAC 33:I.901 et seq.) or a petition for declaratory ruling (La. R.S. 30:2050.10 & LAC 30:I.1101 et seq.). Any interested person may petition the administrative authority in writing to issue, amend, or rescind any regulation. LAC 33:I.907.A. Further, a person with a real and actual interest in a matter may request a declaratory ruling from the LDEQ as to the validity of a rule or the applicability of any rule, order, or statute to any person, property, or existing state of facts or facts certain to arise. La. R.S. 30:2050.10; LAC 33:I.1103. A declaratory ruling is a final agency action subject to judicial review under La. R.S. 30:2050.21. La. R.S. 30:2050.10.